X FILED ___ LODGED
___ RECEIVED ___ COPY
JUN 1 2 2020
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY ___ DEPUTY

Carolin Isabelle Hauser
2675 W. State Route 89A #1111
Sedona, Arizona 86336
Email: carolin@carolinhauser.com
Phone: 928-821-5908

Counsel of Choice for Plaintiff
Steven Lee McMillan
2675 W. State Route 89A #1111
Sedona, Arizona 86336
Email: bringtheworldtome@yahoo.com
Phone: 928-514-4121

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF ARIZONA.

Civil Action No. CV20-08138-PCT-JAT--JFM

**Complaint for Damages for:**

Carolin Isabelle Hause,

Plaintiff

Verses

Elijah M. Smith,

Defendant.

Taylor Mickle,

Defendant.

Christopher Eller,

Defendant.

DOES 1-99

individually and in their official capacities.

1. 42 U.S.C. §1983: Violation of Constitutional Rights under color of law-False Arrest
2. 42 U.S.C. §1983: Violation of Constitutional Rights under § Color of Law (Use of Excessive Force).
3. 42 U.S.C. §1983, *Monell:* Failure to Train and/or Supervise.
4. 42 U.S.C. §1983, *Monell:* Unconstitutional Ratification of Illegal Conduct.
5. 18 U.S.C. §241: Conspiracy Against Rights.
6. 18 U.S.C. §2381: Treason.

7 & 8. 18 U.S.C. §2384: Seditious Conspiracy.
18 U.S.C. §2385: Advocating Overthrow of Government.

9. 18 U.S.C. §219: Officers and Employees Acting as Agents of Foreign Principals.
10. 18 U.S.C. §912: Officer or Employee of the United States.
11. 18 U.S.C.A. §2: Principals.
12. 22 U.S.C. §611: Agents of Foreign Principals.
13. 22 §611(2): Agents of Foreign Principals: 18 U.S.C. 951:Agents of Foreign Governments.
14. 22 U.S.C.A, §611: Agents of Foreign Principals.
22 U.S.C.A, §612: Registration Statements.
15. 18 U.S.C.A. §219: Officers and Employees Acting as Agents of Foreign Principals.
18 U.S.C.A. §951: Agents of Foreign Governments.
22 U.S.C.A, §612: Registration Statements.

§ 16. 22 U.S.C. §262c: Commitments for United States contributions to international financial institutions fostering economic development in less developed countries; continuation of participation.
§ 22 U.S.C. §285g: Status, immunities, and privileges.
§ 22 U.S.C.A. §287j: Participation in future United Nations borrowing; promotion of pattern of financing to avoid of pattern of financing to avoid future large-scale deficits; report to Congress.
§ 17. 22 U.S.C.A. §263a: International Criminal Police Organization.
§ 18. 22 U.S.C.A. §284: Acceptance of membership by United States in International Development Association.
§ 19. 22 U.S.C.A. §286a: Appointments (a) Governors and executive directors; term of office.
§ 20. 22 U. S. C. §286g: Jurisdiction and Venue of Actions.
§ 21. 18 U.S.C.A. §7: Fraudulent Forcible Extraditions.
§ 22. 8 U.S.C.A. Aliens and Nationality §1481: Loss of nationality by native-born or naturalized citizen; voluntary action; burden of proof; presumptions.
§ 23. Battery
§ 24. Negligence
§ 25. Negligent Training and Supervision
§ 26. 18 U.S.C. §2340: The "Torture Act" and The Anti-Torture Act of 1996.
§
§ **Demand for Jury Trial.**

**Introduction.**

1. Plaintiff Carolin Isabelle Hauser from Plaintiff's vacant land located at 3115 North Fort Verde Trail, Rimrock on Saturday December 14th, 2019 about 7:35 AM called CORPORATE YAVAPAI COUNTY SHERRIF'S 911 emergency number for assistance, after calling 911 Defendant Responding deputies Elijah M. Smith and Christopher Eller arrived about 7:56 AM in their combat ready paramilitary squad SUV vehicle, … about 8:10 AM I was arrested.

2. Elijah M. Smith and Christopher Eller interrogated me then Elijah M. Smith and Christopher Eller interrogated my fiancé David Becket about a 100 feet away from me.

3. In the mean time back-up combat ready paramilitary deputy Taylor Mickle arrived and stood by with deputy Smith as Smith was interrogating me.

4. The officers did a pat down on me for weapons. I was unarmed. They took my story and checked my ID. I said to them, *"I don't drink or do any drugs."* Then they went to David and took his story.

5. It was very cold and I was only wearing my pajamas under my coat so I wanted to wait in a nearby tent with a heater. The moment I moved, one of the officers in a very impolite and aggressive way, yelled at me: *"Don't move, we told you to stay there."* I stopped, one walked over. I said, *"I was cold and just wanted to go wait somewhere warmer."*

6. Deputy Smith said, *"Ok, tell me your story again."* I told him my story. I also said, *"I don't remember every detail, which in that moment I didn't because of the pressure from the police."* The officer than said: *"Like from a black out?"* I didn't know what to say so I don't think I said

anything but I was clear that the reason why I didn't remember, was not because of having a black out. I was in fear for my family's lives. By now I regretted calling the police and didn't want me or David to end up in jail, my intent was to get assistance from peace officers not an paramilitary attack in nature from these deputies armed attack.

7. Then everything happened very fast, the deputy Smith said: *"Well since you are cold why don't you wait in our patrol car?"* I already had a bad feeling and said that, *"I didn't want to."* Then Deputy Smith said, *"Well then, you are arrested!"* When Smith told me I was under arrest it made no sense to me, I said, *"No!"* So in an attempt to get help I ran toward my daughter and David. I was in shock having a spontaneous fight or flight reaction.

8. Next thing I remember is my face hitting the dirt and gravel, ***Elijah M. Smith had grabbed my arms (behind my back) tackled me to the dirt and rocks face first, so I couldn't brace the fall with my hands. Next Elijah M. Smith, Taylor Mickle, and Christopher Eller were on top of me I estimate about six hundred pounds of human bodies upon me. This physical altercation did result in life threatening physical injuries. See Exhibits A & B attached hereto and made a part hereof.***

9. Elijah M. Smith and Taylor Mickle interrogated my daughter Maja without my permission and without a court order. My 13 year old daughter standing right there seeing the violent take down, was terrorized by the event. ***She has been extremely quite since!*** Christopher Eller transported Maja to the Camp Verde Sheriff's Office where she was interrogated again without court order nor my permission.

10. ***David being 100 feet or so away, watching and saying nothing was in fear of being shot if he moved.***

11. Elijah M. Smith took me to Camp Verde Jail.

12. Plaintiff Carolin Isabelle Hauser was excessively forcibly restrained, slammed then pinned face down in the gravel and dirt by deputies Elijah M. Smith, Taylor Mickle, and Christopher Eller. ***I was doing nothing illegal;*** I called 911 for assistance regarding an argument with David Malcolm Becket my fiancé.

13. My purpose was to prevent an altercation by the assistance of ***peace officers*** which is common behavior that many people with relationship issues use to cope with their environment.

14. ***Defendant's claimed a power of right, by their actions,*** *to bind Carolin Isabelle Hauser, justified by unconstitutional statute which do not require warrants, which is an act of war which was an unconstitutional usurpation of power during this time of peace.*

15. ***Defendant's paramilitary style captured Carolin Isabelle Hauser on her land.*** Defendant's acts of war were not formally declared in the prescribed manner per public law, they conspired in their central planning veiled in secrecy through corporations which is the essence of modern war even though there was no threat of our nations existence or safety.

16. Defendant's actions were unnecessary in violation of ***Article I, section 10, clause 3,*** *which prohibits the states against keeping troops in time of peace or engaging in war, "unless actually invaded, or in such imminent danger as will not admit of delay."*

17. Elijah M. Smith, Taylor Mickle, and Christopher Eller demonstrated by their actions a serious disregard for the Constitutional rights and safety belonging to Carolin Isabelle Hauser, daughter Maja and fiancé David Becket.

18. Defendant's acts of violence demonstrated that they never received training on Constitutional Public Law and Procedural Law according to the Bill of Rights.

19. Defendant's supposedly are "Constitutional experts" who took my innocent call for assistance then turned my call into a paramilitary combat style excessive forceful seizure. This unlawful arrest was against my will! I suffered serious life threatening injuries as a result!

20.  In addition to providing no meaningful training to Elijah M. Smith, Taylor Mickle, and Christopher Eller, DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY and the CORPORATE SHERIFF'S DEPARTMENT refused to discipline Elijah M. Smith, Taylor Mickle, and Christopher Eller, instead they have defended and are ratifying their ***illegal conduct***.

21. First, during my false arrest and false detention at the Camp Verde Jail from Saturday December 14th, 2019 about 8:50AM until approximately 2:00PM I started noticing neck pain, a jaw and chest injury, constant symptoms of strange abdominal and chest fullness as well as feeling pain caused from the combat paramilitary styled violent take down  that had just gone on with the deputies.

22. Being released from jail Saturday at approximately 2:00PM on my Own Recognizance my ex husband Daniel Sckolnik picked me up at 4:00PM and transported me to a motel in Cottonwood. *I started feeling progressively worse, couldn't eat or swallow from the swelling. I took a shower. Once I relaxed a bit more I realized that something wasn't right with my physiology.*  I called and asked my ex husband to come back, he came back around 9:00PM Saturday night then immediately drove me to the Verde Valley Medical Center Cottonwood - Emergency Room (See Exhibit A & B attached hereto).

23. During my stay at the hospital from approximately 9:56PM Saturday night December 14, 2019 to the next morning the Cottonwood Emergency Room ran tests all night long. As I got no sleep, the night nurse reported to me that they hoped to find the cause of my chest pain and shortness of breath that caused my entire neck to swell.  She stated that air had escaped my lungs into my body cavity and tissues.  She stated to me this was a potentially life threatening situation. Cottonwood Medical Center then transported me via ambulance to the Flagstaff Medical Center Emergency Room on Sunday which was Sunday December 15, 2019.

24. I had spent an entire night *(or was it two nights)* in Cottonwood under potentially life threatening conditions with air coming out of my lungs somewhere caused by the physical force of a three deputies take down.

25. The Cottonwood hospital, at that point, was not prepared for taking action if my situation would have worsened so they transferred me to Flagstaff Emergency Room.  I got to Flagstaff around 8:00AM Sunday December 15, 2019. They had better diagnostics and ran more tests and felt it necessary to keep me under observation. I stayed in the Emergency Room till about 2:00PM then stayed in the hospital observation unit until I was released Monday December 16, 2019 approximately 2:30PM. ***I felt I was fighting for my life!***

26.  **The following information is from hospital records:**  Calls-Consults.  December 14, 2019 23:55:00 Verde Valley Medical Center consulted Flagstaff Medical Center transfer line, they spoke with Dr. Jones, the trauma surgeon, the phone discussion was regarding "esophageal tear" and the need for a definitive study by esophagram which was not available at Verde Valley Medical Center Emergency Room. Dr. Jones felt that if there was an esophageal tear I must be transferred to their higher level of care, i.e. Phoenix.  Verde Valley Medical Center consulted their general surgeon on-call, Dr. Joe Nabiel Azar who stated he did not feel comfortable observing me at Verde Valley Medical Center.

27. The disposition of the conversation was to transfer me to the Flagstaff Medical Center Emergency Room that was the treatment plan.

28. Dr. Jones MD, discussed my case with Dr. DJ Green the trauma surgeon on-call at Flagstaff Medical Center who cared to accept me but then realized that I had a medical condition which he did not treat because he does no repair esophageal injuries. A second call was made to another surgeon who does repair esophageal injuries who was currently available.

29. The decision was then made to accept transfer Emergency Room to Emergency Room to

Flagstaff Medical Center. Dr. Travis Jones was the doctor of record.

30. At the Verde Valley Medical Center Emergency Room they found my lungs mediastinum: had extensive pneumonediastinum without a definitive source, the pheumonediastinum with emphysema extended into the soft tissues of my neck.

31. The hospitals computerized tomography with intravenous contrast found extensive emphysema in the parapharyngeal and retropharyngeal spaces and extending into the mediastinum. Their impression was that emphysema in the deep soft tissues of my neck was extending into the mediastinum.

32. Once I was in Flagstaff Emergency Room I reported to the doctors that I had been arrested at approximately 8:00 AM the morning of December 14, 2019. That I was thrown to the ground with a crushing force by defendants Elijah M. Smith, Taylor Mickle, and Christopher Eller during arrest. That after being placed in jail and released I complained of neck fullness in the anterior aspect of my neck, pain in the anterior neck, and fullness in my chest. I described that I had a tight sensation in my chest.

33. After I was admitted December 15, 2019 the Verde Valley Medical Emergency Room had 24 hours later they made an update: "The problem were injuries: Pneumomediastinum Hyperglycemia Assault."

34. Flagstaff Medical Center "Discharge Summary" in these "Discharge Notes" performed by and verified by Jessica Katherine ACNP stated on December 16, 2019 that the reason for admission was *"This is a 41-year-old female who was involved in a domestic dispute with her significant other. Police were contacted, patient began running away and was reported tackled by police. She reported feeling upper chest and neck fullness. She presented to the ED [Emergency Deparatment] at Verde Valley Medical Center was found to have soft tissue emphysema and pneumomediastinum."*

35. I did some research on Jessica Katherine ACNP, she is an acute care nurse practitioner (ACNP) is a registered nurse who has completed an accredited graduate-level educational program that prepared her as a nurse practitioner. ... The ACNP is a licensed independent practitioner who may autonomously provide care.

36. The Flagstaff Medical Center's final diagnoses was "pneumomediastinum" ***which is air in the center of my chest*** (the mediastinum). Air was in my mediastinum from the form of the combat ready vicious attack by excessive force by defendants Elijah M. Smith, Taylor Mickle, and Christopher Eller. The mediastinum contains the heart, thymus gland, and part of the esophagus and trachea. Air was trapped in this area from the injuries by the deputies ***creating leakage from my lungs, trachea and esophagus***. The cause of my condition was obvious! It happened when defendants Elijah M. Smith, Taylor Mickle, and Christopher Eller exerted such pressure that the pressure raised in my lungs caused the air sacs (alveoli) to rupture! In addition the other nearby structures that allow air to leak into the center of my chest exploded from their vicious attack! This attack caused a life threatening injury to my chest: my neck and upper belly. The active excessive force of the slamming me to the ground face first in the gravel and dirt take down put tremendous pressure on my lungs! This instant change in air pressure (barotrauma) this trauma of excessive force caused intense symptoms such as asthma or lung infections. According to a medical review by Alana Riggers, MD which was written by Stephanie Watson – Undated on September 16, 2018, my condition is very rare it affects 1 in 7,000 and 1 in 45,000 people who are admitted to hospitals.

37. In my view, if I had not gone to the Emergency Room soon my lungs could have collapsed caused by the buildup of air between my lungs and chest wall causing my death!

**Factual Allegations – Specific Purpose Statements.**

The following allegations will be proven in the deposition stage of this lawsuit as well as at

trial: Plaintiff Carolin Isabelle Hauser was, at all times relevant to this lawsuit, a resident of the State of Arizona, and a citizen of the United States. This civil complaint can be summarized as follows:

38. Defendants Elijah M. Smith, Taylor Mickle, Christopher Eller and DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY and the CORPORATE SHERIFF'S DEPARTMENT willful and wanton acts were a carefully contrived central planning regime of corporations armed with Constitutional supposed prerogatives, arming themselves with exclusive rights supposedly bestowed by a government or state and invested in Defendants by Public Policy which are separate from the body of rights enjoyed under Constitutional Public Law and Public Procedure guaranteed by the Constitution.

39. Defendants Elijah M. Smith, Taylor Mickle, Christopher Eller and DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY and the CORPORATE SHERIFF'S DEPARTMENT'S willfully and wantonly committing acts of war, a conspiracy sought to bring about a condition of ***despair*** to rule over the sovereignty of America by force and violence for the purpose of capturing the human and natural resources of America by committing acts of war in violation of the Law of Nations.

40. The de facto Arizona Legislature instead of restricting the foreign and domestic corporations they have empowered and fully funded these foreign and domestic corporations for paramilitary war tactics, the state legislature has attempted to place them under protection.

41. ***The revealed primary purpose for the 14th Amendment*** was the insertion of the word "person" into the Amendment to encompass corporations, which were deemed "legal persons" thus placing them under federal protection from the states instead of words like "citizens".

42. Now, corporations have access to Constitutional process and protection that earlier had been expressly and very often tacitly denied! Through war powers acts corporations have been enthroned allowing corruption in high places, the wealth of the people has been aggregated in a few hands and the Republic destroyed by the concept of "We the Corporate State" instead of "We the People" in violation of the Constitution.

43. "We the Corporate State" is represented by legislators looking out for the legislators' general welfare of his or her corporations while holding stock along with his or her fellow legislators for the small part of their value to be liquidated by dividends of the corporation before they are required to make payment of the stock purchase creating a legislative dictatorship in exchange for legislative bribes for "Just-Us" instead of "Justice" for "We the People" this has created a ***Congressional dictatorship*** at times of peace and especially at time of ***"War and Emergency!"***

44. Madison, The Federalist, No. 10, *"When unlimited power is put in the hands of a few men, corruption is sure to follow."*

45. For men behind the corporations to achieve their desired results of early central planning to be formed for their purpose of money appropriations in which "We the People" get the bill. The legislature ***"under emergency"*** grants any statute even though that law contradicts both Constitutions, state and federal.

46. Constitutional "Lip Service" at the corporate state, at the corporate local level places Americans at the clutches of corporatists who recruit into the central planning paramilitary war machine effort on a highly coordinated basis, with funding provided at the state level, many times by the private sector domestic and foreign orchestrations.

47. The modern corporate state is ruthless, our founding fathers were facing the same problem so they created a system of checks, balances, and separation of powers, they attempted to forever limit the powers of central planners! Big business, firmly allied with big government leave little room for "We the People" to restrain central planning in normal peacetime in violation of constitutional restraints which we can scrutinize carefully, they were identified to close corporate

doors by returning to our power as "We the People" instead of "We the Corporate State" which is the era of monopoly and trusts.

48. It is time for the constitutional dictatorship with it's full-blown centrally planned de facto corporate government to end and the normal peace time de jure Constitutional authority to thrive again! If the de jure Constitution is a "dead letter" then it would cease to have even the force of a statute.

49. If the People's "Thou shalt not" can be brushed aside by the simple ipso dixit, which labels supposed public statements asserted but not proven, like "We shall do whatever we want in violation of Public Law and Public Procedures" and the People must conform by acceptance on blind faith by "We the People", those supposed public servants such as Defendant's DOES 1-99 and Elijah M. Smith, Taylor Mickle, and Christopher Eller then we are fools! They must be bound by our bonding code which is the Constitution, if not the Constitutional mandates are impotent.

50. If the de jure "State of Arizona" has been overthrown then the de jure reverts back to the people according to ***Amendment 9*** - Unenumerated Rights. *"The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."* And ***Amendment 10*** - Reserved Powers. *"The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."*

51. Has the de jure "State of Arizona" abdicated their "States' Rights" to a de facto CORPORATE STATE OF ARIZONA? ***That is the question raised in this case before the court! If this be true there is no de jure "State of Arizona" it has been dissolved as a matter of law according to the Law of Nations.***

52. The statutes and the events in this case provide proof that an emergency de facto corporate government is operating an "emergency de facto corporate government" on a peacetime "corporatists central planning" paramilitary emergency basis in violation of the de jure federal and state Constitutions!

53. In Plaintiff's view, some legislation should be entitled *"An act to Sovietize the American legal system"* because that is just what it has done.

54. When Congress declares an *"emergency"* there is no *"Constitutional Congress,"* there are only endeavors to *"control and compel"* the citizens of this country. This means the de jure Constitution's death! Including a dictatorship in the de facto CORPORATE STATE OF ARIZONA COURTROOMS which is now a Constitutional horror in maritime/admiralty summary process at a time when there is no *declared war*, no rebellion, *and no invasion* which are the only Constitutional enumerated instances justifying military or other emergency rule.

55. ***The legality of using war powers in times of peace, with no congressional declaration of war, is highly suspect, to say the least.*** Defendant's DOES 1-99 and Elijah M. Smith, Taylor Mickle, and Christopher Eller have treated Plaintiff like a foreign foe, like a declared enemy of the United States during war ***"even though it is peacetime"*** which is *"inconsistent"* with *"peacetime" Constitutional separation of State and Federal power as dictated in the 10th Amendment and in the uniformity clause (Article 1, section 8, clause 1)* ***but is entirely consistent with the state of affairs in a nation under "war" or "emergency powers".***

56. A group of statutes penal in nature are unconstitutional on their face! They are crisis instruments of cruelty authorized by the legislative branch of the de facto government carrying out emergency domestic paramilitary operations through established agencies the legislature has devised.

57. The courts operate under crisis authority ignoring public law and public procedures guaranteed by the Constitution. Typically trying criminal cases without warrants, without

indictments, without allowing administrative and procedural matters, denying counsel of choice under admiralty/maritime summary process which control the lives of all American citizens is in violation of the Constitution at ***Article I, section 10, clause 3,*** which prohibits the states against keeping troops in time of peace or engaging in war, *"unless actually invaded, or in such imminent danger as will not admit of delay."*

58. In violation of **the 5th Amendment** which generally prohibits the jurisdiction of martial law courts over individuals *"except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of war or public danger."*

59. Martial law over citizens is clearly allowed only on two explicit conditions: the citizen must be within the military service; and that service must be in time of war or public danger.

60. Thus, central planning has become the essence of modern war claiming a power to the right to bind the people of America, by statute, in all cases whatsoever. Our forefathers did not argue against this power during a war, but claimed that it was an ***unconstitutional usurpation of power*** after the war ended.

61. Extensive central planning cannot occupy the same constitutional space at the same time as envisioned by the Founding Fathers! Viewed in light of the specific prohibition clauses, a restricted picture emerges, foremost among these clauses is the Fifth Amendment, which provides that *"No person shall be deprived of life, liberty, or property without the due process of law."*

62. Central planning powers authorized in the Constitution must not be used in time of peace to extend to any jurisdictional power in suits in law or equity, commenced or prosecuted against citizens especially by a commissioner with unconstitutional powers extending jurisdiction of courts of admiralty for the trial of causes arising within the body of this country.

63. The following penal statutes are unconstitutional on their face …

ARSl3-1203.A.3/3601 Assault per Domestic Violence
ARSl3-2904.A.1/3601 Disorderly Conduct per Domestic Violence
ARSl3-2508.A 2 Resisting Arrest

64. The Yavapai County Jail Camp Verde houses 600 inmates it is estimated that 80%, that is 480 inmates, of the population are ***incarcerated for Domestic Violence and Resisting Arrest*** all of which ***do not require a warrant in violation of the Constitution***. The facts will come out of discovery.

**This civil complaint can be summarized as follows:**

| Count | Claim | Defendants |
|---|---|---|
| 1. | 42 U.S.C. §1983: False Arrest | Smith, Mickle, Eller |
| 2. | 42 U.S.C. §1983: Use of Excessive Force | Smith, Mickle, Eller |
| 3. | 42 §1983: *Monell:* Failure to train and/or supervise | DOES 1-99 |
| 4. | 42 §1983: *Monell: Unconstitutional* Ratification of illegal conduct. | DOES 1-99 |
| 5. | 18 U.S.C. §241: Conspiracy against rights. | Smith, Mickle, Eller and DOES 1-99 |
| 6. | 18 U.S.C. §2381: Treason. | Smith, Mickle, Eller and DOES 1-99 |
| 7. | 18 U.S.C. §2384: Seditious conspiracy. | Smith, Mickle, Eller and DOES 1-99 |
| 8. | 18 U.S.C. §2385: Advocating overthrow of Government. | Smith, Mickle, Eller |

| | | |
|---|---|---|
| | | and DOES 1-99 |
| 9. | 18 U.S.C. §219: Officers and employees acting as agents of foreign principals. | Smith, Mickle, Eller and DOES 1-99 |
| 10. | 18 U.S.C. §912: Officers or employees of the United States | Smith, Mickle, Eller and DOES 1-99 |
| 11. | 18 U.S.C.A. §2: Principals. | Smith, Mickle, Eller and DOES 1-99 |
| 12. | 22 U.S.C. §611 as "Agents of Foreign Principals." | Smith, Mickle, Eller and DOES 1-99 |
| 13. | 22 §611(2): Agents of Foreign Principals: 18 U.S.C. §951: Agents of Foreign Governments. | Smith, Mickle, Eller and DOES 1-99 |
| 14. | 22 U.S.C.A, §611: Agents of Foreign Principals. | Smith, Mickle, Eller and DOES 1-99 |
| | 22 U.S.C.A, §612: Registration Statements. | Smith, Mickle, Eller and DOES 1-99 |
| 15. | 18 U.S.C.A. §219: Officers and Employees Acting as Agents of Foreign Principals. 18 U.S.C.A. §951: Agents of Foreign Governments. 22 U.S.C.A, §612: Registration Statements. | Smith, Mickle, Eller and DOES 1-99 |
| 16. | 22 U.S.C. §262c: Commitments for United States contributions to international individually and in their financial institutions fostering economic development in less developed countries; continuation of participation. 22 U.S.C. §285g: Status, immunities, and privileges. 22 U.S.C.A. §287j: Participation in future United Nations borrowing; promotion of pattern of financing to avoid future large-scale deficits; report to Congress. | Smith, Mickle, Eller and DOES 1-99 |
| 17. | 22 U.S.C.A. §263a: International Criminal Police Organization. | Smith, Mickle, Eller and DOES 1-99 |
| 18. | 22 U.S.C.A. §284: Acceptance of membership by United States in International Development Association. | Smith, Mickle, Eller and DOES 1-99 |
| 19. | 22 U.S.C.A. §286a: Appointments (a) Governors and executive directors; term of office. | Smith, Mickle, Eller and DOES 1-99 |
| 20. | 22 U. S. C. §286g: Jurisdiction and Venue of Actions. | Smith, Mickle, Eller and DOES 1-99 |
| 21. | 18 U.S.C.A. §7: Fraudulent Forcible Extraditions. | Smith, Mickle, Eller and DOES 1-99 |
| 22. | 8 U.S.C.A. Aliens and Nationality §1481: Loss of nationality by native-born or naturalized citizen; voluntary action; burden of proof; presumptions. | Smith, Mickle, Eller and DOES 1-99 |
| 23. | Battery | Smith, Mickle, Eller |
| 24. | Negligence | Smith, Mickle, Eller and DOES 1-99 |
| 25. | Negligent Training and Supervision | DOES 1-99 |

**Plaintiff request a jury trial to pursue justice on these claims.**

**Jurisdiction and Venue.**

65. This is a civil action where jurisdiction is founded on a federal question under 28 U.S.C.§1331.

66. Plaintiffs' claims arise in this judicial district where the events and omissions giving rise to this complaint occurred, namely the unincorporated area known as Rimrock in the County of Yavapai, which is situated in the District of Arizona.

67. Venue is proper in the United States District Court for the District of Arizona under 28 U.S.C. §1391.

**Parties.**

68. Plaintiff Carolin Isabelle Hauser was, at all times relevant to this lawsuit, a resident of the State of Arizona, and a citizen of the United States.

69. Defendant Elijah M. Smith, at all times relevant herein, was a deputy with the CORPORATE SHERIFF'S DEPARTMENT. At all times mentioned herein, defendant Elijah M. Smith, was an employee of the CORPORATE SHERIFF'S DEPARTMENT and acting in an official capacity and under color of law.

70. Defendant Taylor Mickle, at all times relevant herein, was a deputy with the CORPORATE SHERIFF'S DEPARTMENT. At all times mentioned herein, defendant Taylor Mickle, was an employee of the CORPORATE SHERIFF'S DEPARTMENT and acting in an official capacity and under color of law.

71. Defendant Christopher Eller, at all times relevant herein, was a deputy with the CORPORATE SHERIFF'S DEPARTMENT. At all times mentioned herein, defendant Christopher Eller, was an employee of the CORPORATE SHERIFF'S DEPARTMENT and acting in an official capacity and under color of law.

72. Defendants DOES 1-100 Officers, individually and in their official capacities, at all times relevant herein, were officers and/or employees for the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT with policy making authority, acting in their official capacity and under color of law. These Defendants include officers and employees in supervisory positions that participated in the ***supervision and ratification*** of Elijah M. Smith, Taylor Mickle, and Christopher Eller's actions including acts of war in peace times in violation of the Constitution, the lack of training and supervision of these deputies was obvious by their actions.

Plaintiff Carolin Isabelle Hauser alleges as follows:

I.

**First Cause of Action.**

Violation of constitutional rights under color of law (42 U.S.C. §1983)

(False Arrest)

73. Plaintiff alleges and incorporates herein by reference each and every allegation contained in the following paragraphs.

74. Defendants Elijah M. Smith, Taylor Mickle, and Christopher Eller, during all times relevant herein were acting under color of state law. These defendants are being sued in their individual capacity for the purposes of this cause of action.

75. Plaintiff Carolin Isabelle Hauser had a **Fourth Amendment** right to freedom of movement, and to be free from illegal and unreasonable arrest.

76. Defendants Elijah M. Smith, Taylor Mickle, and Christopher Eller, violated this right by detaining and arresting Carolin Isabelle Hauser without reasonable suspicion or probable cause. These defendants were not acting in good faith, were acting under color of law, and violated Carolin Isabelle Hauser's **Fourth Amendment** rights.

77. Defendants Elijah M. Smith, Taylor Mickle, and Christopher Eller's actions in illegally detaining and arresting Carolin Isabelle Hauser caused damage to Plaintiff, in an amount to be proven at trial.

II.

**Second Cause of Action.**

Violation of Constitutional Rights under Color of Law (42 U.S.C. §1983)

(Use of Excessive Force)

78. Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs.

79. Defendants Elijah M. Smith, Taylor Mickle, and Christopher Eller, during all times relevant herein were acting under color of state law. These defendants are being sued in their individual capacity for the purposes of this cause of action.

80. Plaintiff Carolin Isabelle Hauser had a **Fourth Amendment** right to be free from being subjected to the use of excessive force by these arresting deputies.

81. The Flagstaff Medical Center's final diagnoses was "pneumomediastinum" which is air in the center of my chest (the mediastinum). Air was in my mediastinum caused by the combat ready vicious attack with excessive force by defendants Elijah M. Smith, Taylor Mickle, and Christopher Eller.

82. The mediastinum contains the heart, thymus gland, and part of the esophagus and trachea. Air was trapped in this area from the injuries by the deputies creating leakage from my lungs, trachea and esophagus.

83. The cause of my condition was obvious! It happened when defendants Elijah M. Smith, Taylor Mickle, and Christopher Eller exerted excessive force of such pressure that the pressure raised in my lungs caused the air sacs (alveoli) to rupture! In addition the other nearby structures that allowed air to leak into the center of my chest which exploded due to the deputies vicious attack!

84. Deputies excessive forceful attack caused a life threatening injury to my chest: my neck and upper belly.

85. The active force of the slamming me to the ground face first in the gravel and dirt the excessive force of the take down put intense tremendous pressure on my lungs! This instant change in air pressure (barotrauma), this trauma caused intense symptoms such as asthma or lung infections.

86. ***Plaintiff alleges that, if I had not gone to the Emergency Room soon my lungs could have collapsed caused by the buildup of air between my lungs and chest wall causing my death!***

87. Defendants Elijah M. Smith, Taylor Mickle, and Christopher Eller violated Plaintiff's Fourth Amendment right by taking Carolin Isabelle Hauser slamming her to the ground, and pinning her down using excessive force for an extended amount of time, despite having no reasonable suspicion or probable cause to believe that any crime had been committed.

88. These defendants were not acting in good faith, were acting under color of law, and violated Carolin Isabelle Hauser's **Fourth Amendment** rights to be free from excessive force.

90. Defendants Elijah M. Smith, Taylor Mickle, and Christopher Eller's actions in tackling unarmed Carolin Isabelle Hauser to the ground and pinning her face into the gravel and dirt as part of an illegal and unreasonable arrest and their excessive force caused damage to Plaintiff, in an amount to be proven at trial.

III.

**Third Cause of Action.**

Failure to Train and / or Supervise (42 U.S.C. §1983, Monell)

91. Plaintiff re-alleges and incorporates herein by reference each and every allegation contained

in the preceding paragraphs.

92. Defendants DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY and the CORPORATE SHERIFF'S DEPARTMENT, as a matter of custom, practice, and/or policy, failed to institute, require, and enforce proper and adequate training and supervision on interacting and dealing with citizens—including this unarmed citizen—when the need for such training and supervision was obvious especially in the area of excessive force.

A. They failure to properly train and supervise their employees resulted in a violation of Carolin Isabelle Hauser's **Fourth Amendment** rights.

B. They failed to train their employees on how to arrest a citizen who is unarmed on how to distinguish such a citizen from an armed common criminal.

C. They failed to train their employees to recognize "a call for assistance" as a common and recurrent tool used by citizens to cope with the citizens inter personal relationships.

D. They failed to train their employees to avoid unwarranted and unnecessary beating of a citizen using excessive force, when that beating could result in substantial harm and anxiety to the citizen as a result of a citizens call for assistance.

E. They failed to train their employees on techniques for communicating with citizens, including using a reasonable tone of voice and avoiding force and violence.

F. They failed to supervise their employees on their knowledge and adherence to the practices outlined above, and others, and on the proper procedures and practices used by their employees generally in interacting with innocent citizens.

93. Defendants DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT are also liable in their individual capacity as supervisors as a result of their actions and inactions in the training, supervision, and control of Elijah M. Smith, Taylor Mickle, and Christopher Eller, for their acquiescence in Elijah M. Smith, Taylor Mickle, and Christopher Eller's deprivation of Carolin Isabelle Hauser's Constitutional rights, and for conduct that showed a reckless and/or callous indifference to Carolin Isabelle Hauser's Constitutional rights.

A. They failed to properly train and supervise their officers, deputies and/or employees as a matter of policy, custom, and/or practice, which was deliberately indifferent to Carolin Isabelle Hauser's **Fourth Amendment** rights and done with conscious disregard for the dangers of harm and injury to Carolin Isabelle Hauser and others similarly situated.

B. They failed to train and supervise their employees, deputies and officers who were the moving force behind the violations of Carolin Isabelle Hauser's **Fourth Amendment** rights, and proximately (they are the proximate cause of their own injuries), foreseeably, they actually caused Plaintiff to suffer damages in an amount to be proven at trial.

IV.

**Fourth Cause of Action.**

Unconstitutional Ratification of Illegal Conduct (42 U.S.C. §1983, Monell).

94. Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs.

95. Defendants Elijah M. Smith, Taylor Mickle, and Christopher Eller acted under color of state law during their illegal arrest of Carolin Isabelle Hauser.

A. Their illegal conduct deprived Carolin Isabelle Hauser of her **Fourth Amendment** rights.

96. Defendant DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY and the CORPORATE SHERIFF'S DEPARTMENT acted under color of state law.

97. Defendants Elijah M. Smith, Taylor Mickle, and Christopher Eller had final policy making

authority from defendants DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY and the CORPORATE SHERIFF'S DEPARTMENT concerning Elijah M. Smith, Taylor Mickle, and Christopher Eller's conduct in this case.

A. They ratified defendants Elijah M. Smith, Taylor Mickle, and Christopher Eller,'s unconstitutional actions against Carolin Isabelle Hauser, that is, they knew of and specifically made a deliberate choice to approve of Elijah M. Smith, Taylor Mickle, and Christopher Eller's actions and the alleged basis for them.

B. They illegally ratified Elijah M. Smith, Taylor Mickle, and Christopher Eller's conduct against Carolin Isabelle Hauser.

C. They approved of Elijah M. Smith, Taylor Mickle, and Christopher Eller's actions, clearing them of any improper conduct.

D. They failed to impose disciplines, and orderings of DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT to discipline Elijah M. Smith, Taylor Mickle, and Christopher Eller after the illegal arrest of Plaintiff.

E. They illegally ratified Elijah M. Smith, Taylor Mickle, and Christopher Eller's conduct despite knowing about Elijah M. Smith, Taylor Mickle, and Christopher Eller's extensive and repeated disregard for the Constitutional rights of others and by doing nothing to protect Carolin Isabelle Hauser and others from further harm.

F. They illegally ratified Elijah M. Smith, Taylor Mickle, and Christopher Eller's conduct by, and along with defendants DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY and the CORPORATE SHERIFF'S DEPARTMENT and other supervisors, protecting Elijah M. Smith, Taylor Mickle, and Christopher Eller from discipline, and/or harassing and/or targeting any employees who complained against Elijah M. Smith, Taylor Mickle, and Christopher Eller or attempted to correct Elijah M. Smith, Taylor Mickle, and Christopher Eller's illegal behavior.

G. They are also liable in their individual capacity as a result of their actions and inactions in the training, supervision, and/or control of Elijah M. Smith, Taylor Mickle, and Christopher Eller for their acquiescence in Elijah M. Smith, Taylor Mickle, and Christopher Eller's deprivation of Carolin Isabelle Hauser's Constitutional rights, and for conduct that showed a reckless and/or callous indifference to Carolin Isabelle Hauser's Constitutional rights.

H. Their ratification of Elijah M. Smith, Taylor Mickle, and Christopher Eller's conduct was deliberately indifferent to Carolin Isabelle Hauser's **Fourth Amendment** rights and done with conscious disregard for the dangers of harm and/or injury to Carolin Isabelle Hauser and others similarly situated.

I. Their ratification of Elijah M. Smith, Taylor Mickle, and Christopher Eller's conduct was the moving force behind the violation of Carolin Isabelle Hauser's **Fourth Amendment** rights, and/or proximately (their ratification are the proximate cause of their own injuries), foreseeably, and/or actually caused Plaintiff to suffer damages in an amount to be proven at trial.

V.

**Fifth Cause of Action.**

18 U.S.C. Crimes and Criminal Procedure, §241:

Conspiracy Against Rights.

98. Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs.

99. 18 U.S.C. Crimes and Criminal Procedure, §241: Conspiracy against rights. Defendants Elijah M. Smith, Taylor Mickle, Christopher Eller and DOES 1-99 including the de facto

CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT are conspirator in **conspiracy against rights** guaranteed by the federal and state Constitutions through the use of **paramilitary distress warrants**, **biological warfare**, **force and violence** and public attacks under a central planning scheme justifying paramilitary actions in time of peace in violation of the Constitution and Amendments. DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT and Elijah M. Smith, Taylor Mickle, and Christopher Eller's foreign operations in the United States serve predominantly foreign interest in a mixed war which benefit the interests of foreign persons which is owned and controlled, financed, subsidized in whole or in substantial part by a government(s) of foreign counties as well as a foreign political parties in violation of Carolin Isabelle Hauser's rights according to the Constitution including the Amendments.

100. DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT and Elijah M. Smith, Taylor Mickle, and Christopher Eller must:

A. Must disclose their foreign agency to the agency or officials of the de jure United States with whom such activities are conducted by DOES 1-99 and Elijah M. Smith, Taylor Mickle, and Christopher Eller.

B. Must disclose who supervises, directs, controls and finances their operations or it violates Carolin Isabelle Hauser's right to due process and equal protection under the **5th Amendment** which eliminates any power to enforce criminal laws as a means of central planning mixed war in time of peace. *"No person shall be held to answer for a capital or otherwise infamous crime unless upon a presentment or indictment,"* leaving all federal criminal charging powers in the hands of the people.

101. DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT and Elijah M. Smith, Taylor Mickle, and Christopher Eller are enforcing foreign admiralty maritime international contracts known as Public Policies rather than Public Law and Public Procedures in the Constitution through enforcement of central planning mixed war practices in peace time as agents of foreigners which is a conspiracy against Carolin Isabelle Hauser's rights. Enforced by the Uniform Commercial Code in private foreign corporate tribunals through the use of force and violence in the de jure "Arizona" as a weapon against the "American republic" by means of being "instrumentalities" of interstate and foreign commerce under the Uniform Commercial Code in the United States.

102. As a direct, proximate (the defendants are the proximate cause of their own injuries), and foreseeable result of these defendants' central planning paramilitary mixed war, in time of peace, and *extradition* into *Foreign Jurisdictions*, and their maliciously prosecution under undisclosed Foreign Laws have declared war on the American People including the Plaintiff is a direct conspiracy against Carolin Isabelle Hauser's rights. As a result Plaintiff suffered damages in an amount according to proof at the time of trial.

VI.

**Sixth Cause of Action.**

18 U.S.C. Crimes and Criminal Procedure, §2381: Treason

103. Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs.

104. 18 U.S.C. Crimes and Criminal Procedure, §2381: Treason. Defendants Elijah M. Smith, Taylor Mickle, and Christopher Eller are in conspiracy with DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or

CORPORATE SHERIFF'S DEPARTMENT as well as the legislature who under pretense and color of power and pretense of authority passed unconstitutional statutes who through fraud, plunder, and deprivation of rights under color of law routinely perform false arrests and false imprisonments which are treasonous, seditious and subversive activities.

105. Defendants Elijah M. Smith, Taylor Mickle, and Christopher Eller arrested Plaintiff without a warrant using mixed war paramilitary tactics of excessive force during time of peace to steal the sovereignty including Carolin Isabelle Hauser of her right to property through theft by the use of force and violence their torturous acts which are criminal torts in time of peace according to Article I, section 10, clause 3, which prohibits states against keeping troops in time of peace or engaging in war.

106. Defendants Elijah M. Smith, Taylor Mickle, and Christopher Eller filed charges in violation of **Amendment Five** which generally prohibits the jurisdiction of martial law courts over Carolin Isabelle Hauser in time of peace.

107. As a direct, proximate (the defendants are the proximate cause of their own injuries), and foreseeable result of these defendants' central planning paramilitary mixed war, in time of peace, and *extradition* into *Foreign Jurisdictions,* and their malicious prosecution under undisclosed Foreign Laws have declared war on the American People including the Plaintiff is a direct treason through fraud, plunder, and deprivation of rights against Carolin Isabelle Hauser's right. As a result Plaintiff suffered damages in an amount according to proof at the time of trial.

VII & VIII.

**Seventh & Eighth Causes of Action.**

18 U.S.C. Crimes and Criminal Procedure, §2384: Seditious Conspiracy

18 U.S.C. Crimes and Criminal Procedure: Advocating Overthrow of Government.

108. Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs.

109. 18 U.S.C. Crimes and Criminal Procedure, §2384: Seditious conspiracy, 18 U.S.C. Crimes and Criminal Procedure, §2385: Advocating overthrow of Government. Defendants Elijah M. Smith, Taylor Mickle, Christopher Eller and DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT are part of central planning in time of peace to nullify Public Law and Public Procedures to extort Plaintiff's right to property and Constitutional rights by:

A. First, by their central planned extortion ring which conducts mixed war – advocating overthrow of the sovereignty, by conducting a confidence game as inland pirates capturing the American people for their profit and gain.

B. Second, by using anti social moral cowards who through vicious paramilitary attacks, seditiously conspire through their acts of seditious overthrow of the de jure government which they sanction by central planning which is codified in the Uniform Commercial Code in violation of Public Law and Public Procedures according to the Constitutions state and federal.

C. Third, defendants created a central planning regime in peace time to suspend Public Law and Procedural Law according to the Constitution when there was no extreme necessity or immediate nor impending public danger for the purpose of seizure and appropriation to public use of the American people as well as Carolin Isabelle Hauser's private property.

D. Fourth, the seditious conspiracy is perpetrated during time of peace when there was no immediate, imminent, nor impending emergency to suspend the Constitutional Public Law nor the Public Procedures. There was no extreme nor imperative reason to resort to paramilitary tactics in time of peace.

110. Defendants Elijah M. Smith, Taylor Mickle, Christopher Eller and DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT through central planning in peace time have organized the assembly of persons who teach, advocate and/or encourage the overthrow and/or destruction of the de jure state and federal governments by force and violence by being directed, controlled and financed as agents of foreign principals who's purposes is overthrow and destruction in violation of 18 U.S.C. §2385: Advocating overthrow of Government. "Whoever organizes or helps or attempts to organize any society, group, or assembly of persons who teach, advocate, or encourage the overthrow or destruction of any such government by force or violence; or becomes or is a member of, or affiliates with, any such society, group, or assembly of persons, knowing the purposes thereof— Shall be fined under this title or imprisoned not more than twenty years, or both, and shall be ineligible for employment by the United States or any department or agency thereof, for the five years next following his conviction.

111. DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT and Elijah M. Smith, Taylor Mickle, and Christopher Eller being more than two persons have conspired to commit overthrow and destruction of the de jure state and federal governments by force and violence through war a mixed war. The Plaintiff alleges that the de facto CORPORATE STATE OF ARIZONA, a corporation styled in boxed capitals, is a ***"instrumentality"*** of a foreign principal by and through DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT, its officers, officials as well as their ***agents***, including defendants Elijah M. Smith, Taylor Mickle, and Christopher Eller, who have:

A. Through central planning in peace time committed acts of *mixed war intentionally* against this citizen as well as the de jure federal and state Constitutions, and,

B. By their central planning and behavior, the de facto CORPORATE STATE OF ARIZONA declared war on all citizens including this citizen.

C. Carolin Isabelle Hauser, a citizen exercises her rights to recognize this act by the publication of her solemn recognition of ***mixed war*** by this complaint.

D. Notice is hereby given that this complaint has the same force as the Declaration of Independence. It invokes Carolin Isabelle Hauser's United States Constitutional **9th and 10th Amendment** guarantees of the right to create an effective remedy where otherwise none exists.

112. Defendants DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT, Elijah M. Smith, Taylor Mickle, and Christopher Eller are not directed, controlled nor financed by the de jure "State of Arizona" in money of account according to the Constitution for the United States of America, 1787, Article I, Section 10, Clause 1. "No State shall enter into any Treaty, Alliance, or Confederation; ... *coin Money; emit Bills of Credit; make any Thing but gold and silver Coin a Tender in Payment of Debts;...*" according to the 1792 Coinage Act.

113. Defendants Elijah M. Smith, Taylor Mickle, Christopher Eller and DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT knowingly and willfully advocates, abets, advises and teaches the duty, necessity, desirability and propriety of overthrowing and destroying the de jure government of the United States and the de jure government of Arizona as well as Arizona's political subdivisions by force and violence in times of peace through central planning in violation of the Constitution there intent is:

A. Their intent is to cause the overthrow and destruction, through central planning in times of

peace, through force and violence of the de jure state and federal governments public laws and public procedures in the Bill of Rights by advocating force and violence through public policy as well as the public procedures.

114. As a direct, proximate (the defendants are the proximate cause of their own injuries), and foreseeable result of these defendants' central planning paramilitary mixed war, in time of peace, and *extradition* into *Foreign Jurisdictions,* and their maliciously prosecution under undisclosed Foreign Laws they have declared war on the American People including Carolin Isabelle Hauser which is a direct violation of public law and public procedures, when there was no extreme necessity nor immediate nor impending public danger for seizure and appropriation for public use of Carolin Isabelle Hauser's private property including Plaintiff's physical body. As a result Plaintiff suffered damages in an amount according to proof at the time of trial.

IX.

**Ninth Cause of Action.**

18 U.S.C. Crimes and Criminal Procedure, §219:

Officers and Employees Acting as Agents of Foreign Principals.

115. Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs.

116. 18 U.S.C. Crimes and Criminal Procedure, §219: Officers and employees acting as agents of foreign principals.

117. Defendants Elijah M. Smith, Taylor Mickle, Christopher Eller and DOES 1-99, at all times relevant herein, were employed by the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT as instrumentalities as agents of foreign principals, who are chief policy-makers for defendants Elijah M. Smith, Taylor Mickle, and Christopher Eller. At all times mentioned herein, Defendants Elijah M. Smith, Taylor Mickle, Christopher Eller and DOES 1-99, were employed by the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT and acting in an official capacity and under color of law who are in supervisory positions that participated in the ***supervision and ratification*** of defendant's Elijah M. Smith, Taylor Mickle, and Christopher Eller's paramilitary actions justified by a central planning regime in peace time for the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT which has declared war on the American people.

118. As a direct, proximate (the defendants are the proximate cause of their own injuries), and foreseeable result of these defendants' central planning paramilitary mixed war, in time of peace, and *extradition* into *Foreign Jurisdictions,* and their maliciously prosecution under undisclosed Foreign Laws have declared war on the American People including Carolin Isabelle Hauser. As a result Plaintiff suffered damages in an amount according to proof at the time of trial.

X.

**Tenth Cause of Action.**

Title 18 U.S.C. Crimes and Criminal Procedure, §912:

Officer or Employee of the United States

119. Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs.

120. Title 18 U.S.C. Crimes and Criminal Procedure, §912. Officer or employee of the United States. Plaintiff through discovery demands that DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT and Elijah M. Smith, Taylor Mickle, and Christopher Eller must:

A. Must declare under penalty of perjury that they do not have a conflict of allegiance, a conflict of law, nor a conflict of interest by false impersonation of public servants supposedly justified by central planning of their paramilitary mixed war under Title 18 §912 violation of which is a felony by pretending the de jure character when they demand any money, paper, document, or thing of value, which violation shall be fined under this title or imprisoned not more that three years, or both.

B. Must declare under penalty of perjury that they have not violate the fundamental Constitutional Public Law and Public Procedures nor the de jure State and Forum, breaching numerous duties imposed upon our Public Offices by Law.

C. Must declare under penalty of perjury that they are not holding, enjoying and wrongfully exercising our Public Offices of Honor, Trust and Profit.

D. Must declare under penalty of perjury that they are not determining that their central planned paramilitary mixed was in their de facto providence to further violate the fundamental federal and state Constitutions, by depositing and paying all fines, fees, etc. into their Foreign Organizations "fiscal and depository agency."

E. Must declare under penalty of perjury that their positions depends on clear principle that every act of a delegated authority, contrary to the tenor or commission under which it is exercised is void. That no act contrary to the Constitution can be valid.

F. Must declare under penalty of perjury must affirm that they are not operating a paramilitary mixed war justified by central planning in time of peace.

G. Must declare under penalty of perjury that they must affirm that they are not greater than their principal "We the People"; that the servant is not above the master. That the representatives of the people are not superior to the people themselves.

H. Must declare under penalty of perjury that they are acting by virtue of powers granted by "We the People" not by "We the Corporate State."

121. Plaintiff alleges that DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT and Elijah M. Smith, Taylor Mickle, and Christopher Eller are doing what they are not authorized to do, doing what they are forbidden to do which is a paramilitary mixed war justified by their central planning in time of peace.

122. As a direct, proximate (the defendants are the proximate cause of their own injuries), and foreseeable result of these Defendants' central planning paramilitary mixed war, in time of peace, and *extradition* into *Foreign Jurisdictions,* and their malicious prosecution under undisclosed Foreign Laws have declared war on the American People including the Plaintiff which is a direct conspiracy while pretending to be in de jure character yet in fact and law they are demanding money, paper, documents and things of value against Carolin Isabelle Hauser's rights. As a result Plaintiff suffered damages in an amount according to proof at the time of trial.

XI.

**Eleventh Cause of Action.**

18 U.S.C.A. Crimes and Criminal Procedure, §2: Principals.

123. Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs.

124. 18 U.S.C.A. Crimes and Criminal Procedure, §2. Principals.

125. DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT and Defendant's Elijah M. Smith, Taylor Mickle, and Christopher Eller are aiding, abetting, counseling, commanding, procuring and enforcing the seditious International programs and policies according to Silent

Weapons for Quiet Wars.

126. DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT are part of the de facto "CORPORATE STATE OF ARIZONA" that engages and confirms the international character of their operation, a central planning regime in peace time to suspend public law and procedural law, under "conventions" a.k.a. treaties in such activities in collusion with the Internationals, etc., under pretense of the *"Intergovernmental Personnel Act"*, acting as the "FedState Team" under direction and control of the Assistant Commissioner (INTERNATIONAL) according to the Commissioner's Advisory Group Meeting, September 24 & 25, 1986, Minutes; FedState Bulletins they are a part of:

A. They are part of the de facto "CORPORATE STATE OF ARIZONA" inter-agency operation which was designed once again to implement and enforce central planning of mixed war through paramilitary *"foreign policy of the United States and its obligations to international organizations"*, in conspiracy and collusion with "foreign governments, the Office of Secretary, the State Department, the Agency For International Development the Trade and Development Program, the Organization of American States, and other international organizations..." according to Commissioner's Advisory Group Meeting, September 24 & 25, 1986, Minutes; FedState Bulletins Section 1132.61.

B. They are committing offenses against the de jure United States by aiding, abetting, counseling, commanding, inducing and procuring for their foreign principals the overthrow of the de jure government.

C. There act are willful acts being done directly by them for their principal against the de jure United States. There acts are punishable as a principal.

127. DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT and Defendant's Elijah M. Smith, Taylor Mickle, and Christopher Eller's actions are illegal, they are punishable as a principal which caused damage to Plaintiff, in an amount to be proven at trial.

XII.

**Twelfth Cause of Action.**

22 U.S.C. Foreign Relations and Intercourse §611: Agents of Foreign Principals.

128. Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs.

129. 22 U.S.C. Foreign Relations and Intercourse §611, as agents of foreign principals. Defendant DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT is a de facto governmental entity organized and existing under the laws of the de facto CORPORATE STATE OF ARIZONA and a municipality existing in the de facto CORPORATE COUNTY OF YAVAPAI, in the de facto STATE OF ARIZONA.

A. At all times mentioned herein, the de facto CORPORATE SHERIFF'S DEPARTMENT which is a branch of the de facto CORPORATE COUNTY OF ARIZONA and a de facto governmental entity organized and existing under the laws of the de facto CORPORATE STATE OF ARIZONA.

B. The de facto state and county is a municipality who issues checks called "bills of credit" a.k.a. Federal Reserve notes from their master which proves who their principal in law is and their de facto character.

C. Defendant's Elijah M. Smith, Taylor Mickle, and Christopher Eller, at all times relevant herein, were deputies with the de facto CORPORATE SHERIFF'S DEPARTMENT.

D. At all times mentioned herein, defendant's Elijah M. Smith, Taylor Mickle, and

Christopher Eller were employees of the de facto CORPORATE SHERIFF'S DEPARTMENT and acting in official capacities and under color of law.

E. Defendants Elijah M. Smith, Taylor Mickle, and Christopher Eller, at all times relevant herein, are supervised within the de facto CORPORATE SHERIFF'S DEPARTMENT by defendants DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT.

130. At all times mentioned herein. Defendants Elijah M. Smith, Taylor Mickle, Christopher Eller and DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT are directly financed and subsidized in a credit operation, being used for perverted purposes through in de facto character according to Title 22 §611 as "agents of foreign principals" as agents, representative, employees, or servants.

A. Elijah M. Smith, Taylor Mickle, and Christopher Eller are directly or indirectly supervised, directed, controlled, financed, or subsidized in whole or in major part by foreign principals, who directly or through any other person DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT who are engaged within the United States in political activities *(such as changing our de jure Public Laws to Public Policy through central planning in times of peace in paramilitary operations)* for or in the interest of such foreign principals for the purpose of soliciting and collecting information as "information-service employees" among other things in the interest of their foreign principals.

B. The defendant's Elijah M. Smith, Taylor Mickle, and Christopher Eller as well as DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT represent the interest of foreign principals through de facto agencies or as de facto officials of the de facto Government of a foreign country.

C. The term *"government of a foreign country"* includes any subdivision of any such group and any group or agency to which such sovereign de facto authority or functions are directly or indirectly delegated.

131. DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT and Defendant's Elijah M. Smith, Taylor Mickle, and Christopher Eller's actions are illegal, they are directly or indirectly supervised, directed, controlled, financed and subsidized by the alien/foreign corporate "Governor" of "The Fund" and "The Bank" a/k/a "Secretary of Treasury" without foreign agents registration which caused damage to Plaintiff, in an amount to be proven at trial.

XIII.

**Thirteenth Cause of Action.**

Title 22 Foreign Relations and Intercourse §611(2):

Agents of Foreign Principals.

Title 18 U.S.C. Crimes and Criminal Procedures, §951:

Agents of Foreign Governments.

132. Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs.

133. Title 22 Foreign Relations and Intercourse §611(2), Agents of Foreign Principals. Title 18 U.S.C. Crimes and Criminal Procedures, §951. Agents of Foreign Governments.

134. Plaintiff through discovery shall demand that DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT and Elijah M. Smith, Taylor Mickle, and Christopher Eller declare

under penalty of perjury:

A. Declare under penalty of perjury their central planning of mixed war in time of peace, their public policy and purposes required by public disclosure of their paramilitary activities for or on behalf of foreign governments, foreign political parties, and other foreign principals so that this Plaintiff as well as the people of the United States shall be informed of the identity of such persons so that Plaintiff can appraise their statements and actions in the light of Defendant's associations and/or activities.

B. Failure to do so is a violation of Title 22 USC, Agents of Foreign Principals §611(2). Any person who agrees, consents, assumes or purports to act in that character according to Title 18 Crimes and Criminal Procedures, §951. Agents of Foreign Governments which violate the oath of allegiance to the de jure is 10 years in prison and a $75,000 fine.

135. Plaintiff through discovery demands that DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT and Elijah M. Smith, Taylor Mickle, and Christopher Eller declare under penalty of perjury:

A. Declare under penalty of perjury that they are operating a central planned paramilitary mixed war within the United States being subject to the direction and control of a foreign government or principals. Title 22 U.S.C. §612(a): Foreign agents registration statement. §612(b): Supplements.

B. Declare under penalty of perjury that they do not have "registration statements" required to be filed with the Attorney General in violation of Title 22 §612(a) and the supplements required to be filed under Title 22 §612(b).

C. Declare under penalty of perjury that they do not serve the de jure "Arizona" nor the "American republic".

D. Declare under penalty of perjury that they are not de jure employees, nor officials of the Government of the United States nor any section of the public within the United States. They have formulated, adopted, and changed the domestic Public Law including Public Procedural Law into central planning of their paramilitary mixed war in peace time in violation of enforcing the de jure United States as well as the de jure "Arizona" Constitutions.

136. DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY and the CORPORATE SHERIFF'S DEPARTMENT and Defendant's Elijah M. Smith, Taylor Mickle, and Christopher Eller's actions are illegal, they are directly or indirectly supervised, directed, controlled, financed and subsidized by the alien/foreign corporate "Governor" of "The Fund" and "The Bank" a/k/a "Secretary of Treasury" without foreign agents registration. They are not directed, controlled, financed and subsidized by the de jure United States nor the de jure "State of Arizona" which caused damage to Plaintiff, in an amount to be proven at trial.

XIV.

**Fourteenth Cause of Action.**

22 U.S.C.A, Foreign Relations and Intercourse §611:
Agents of Foreign Principals.
22 U.S.C.A, Foreign Relations and Intercourse §612:
Registration Statements.

137. Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs.

138. 22 U.S.C.A, Foreign Relations and Intercourse §611, agents of foreign principals. 22 U.S.C.A, Foreign Relations and Intercourse §612, registration statement.

A. The documentary evidence declares that DOES 1-99 including the de facto CORPORATE

STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY and the CORPORATE SHERIFF'S DEPARTMENT and Defendant's Elijah M. Smith, Taylor Mickle, and Christopher Eller are agents, et al., acting individually and jointly, in collusion together and with each other, as "Agents of a Foreign Principal" within the meaning and intent of the "Foreign Agents Registration Act of 1938" according to Title 22 U.S.C.A §§611, 612.

B. Defendants Elijah M. Smith, Taylor Mickle, and Christopher Eller wear the badges of Titles of Nobility.

C. Defendants are in conflict of allegiance, conflict of law and conflict of interest who by their acts are aliens, using usurpation to overthrow the de jure federal government as well as the de jure "State of Arizona".

D. Defendants serve the de facto CORPORATE STATE OF ARIZONA a corporation, which is not a state, they are instrumentalities and agents of foreign powers, who are in servitude to proscription of the Communist Party, who deny due process of law by not getting indictments on criminal cases who take private property for their own profit and gain who are Federal Reserve agents as well as instrumentalities and agents of foreign corporations who direct, control and finance Defendants operations under the justification of central planning in time of war which is based on Admiralty Maritime Uniform Commercial Code Commercial (Negotiable Instruments) Law using colorable non-redeemable negotiable instruments which are counterfeit bills of credit which is not money of account of this country to discharge debts rather than pay there debts for Defendants Elijah M. Smith, Taylor Mickle, Christopher Eller and DOES 1-99 enrichment.

E. Further Defendants Elijah M. Smith, Taylor Mickle, Christopher Eller and DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY and the CORPORATE SHERIFF'S DEPARTMENT are federal employees who have no loyalty to the de jure "State of Arizona" evidenced by not paying debts with *lawful money of account in dollars silver minted by the United States Mint according to the Coinage Act of April 2, 1792, Chapter 16 §20, 1 Stat 250, Title 31 Money and Finance, United States Code 1952 edition §371, definitions.*

F. Defendants Elijah M. Smith, Taylor Mickle, Christopher Eller and DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY and the CORPORATE SHERIFF'S DEPARTMENT do not represent the de jure "State of Arizona" as ***no state shall according to*** the Constitution for the United States of America, 1787, Article I, Section 10, Clause 1. "No State shall enter into any Treaty, Alliance, or Confederation; ... *coin Money; emit Bills of Credit; make any Thing but gold and silver Coin a Tender in Payment of Debts;...*"

G. Defendants Elijah M. Smith, Taylor Mickle, Christopher Eller and DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY and the CORPORATE SHERIFF'S DEPARTMENT are "Agents of Foreign Principals," are Federal Reserve Agents of an alien corporation soliciting and collecting IMF obligations which are interagency, international obligations of their foreign principal in which the United States is a voting share stockholder, according to the Uniform Commercial Code, 22 U.S.C.A. §611(c)(1)(ii) & (iii).

H. DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY and the CORPORATE SHERIFF'S DEPARTMENT and Defendant's Elijah M. Smith, Taylor Mickle, and Christopher Eller have been and are now acting as "information-service employees" 22 U.S.C.A. §611(c)(1)(ii), and have been and do now "solicit, collect, disburse or dispense Contribution (Tax - pecuniary contribution, Blacks Law Dictionary 5th Editions), loans, money or other things of value for or in interest of such foreign principal 22 U.S.C.A §611(c)(1)(iii). 22 U.S.C.A. 611(c)(2).

I. DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY and the CORPORATE SHERIFF'S DEPARTMENT and Defendant's Elijah M. Smith, Taylor Mickle, and Christopher Eller have entered into service agreements with Foreign Principal(s) pursuant to 22 U.S.C.A. 611(c)(2), as evidenced by Treasury Delegation Order No. 91, i.e. the Agency For International Development, Memorandum of Understanding, General Agreement, etc.

139. DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY and the CORPORATE SHERIFF'S DEPARTMENT and Defendant's Elijah M. Smith, Taylor Mickle, and Christopher Eller's actions are illegal, they are directly or indirectly supervised, directed, controlled, financed and subsidized by the alien/foreign corporate "Governor" of "The Fund" and "The Bank" a/k/a "Secretary of Treasury" without foreign agents registration. They are not directed, controlled, financed and subsidized by the de jure United States nor the de jure "State of Arizona" which caused damage to Plaintiff, in an amount to be proven at trial.

XV.

**Fifteenth Cause of Action.**

18 U.S.C.A. Crimes and Criminal Procedures §219:

Officers and Employees Acting as Agents of Foreign Principals.

18 U.S.C.A. Crimes and Criminal Procedures §951:

Agents of Foreign Governments.

22 U.S.C.A, Foreign Relations and Intercourse §612:

Registration Statements.

140. Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs.

141. 22 U.S.C.A. Foreign Relations and Intercourse §612: Registration Statements and: 18 U.S.C.A. Crimes and Criminal Procedures §219: Officers and Employees Acting as Agents of Foreign Principals. 18 U.S.C.A. Crimes and Criminal Procedures §951:  Agents of Foreign Governments.

A. DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY and the CORPORATE SHERIFF'S DEPARTMENT and Defendant's Elijah M. Smith, Taylor Mickle, and Christopher Eller, lack authority to act for lack of a foreign Agents Registration Statement, according to 22 U.S.C.A. §612 and 18 U.S.C.A. §§219 & 951.

B.   Military authority cannot be imposed into civil affairs, Department Of The Army Pamphlet 27100-70, Military Law Review, Volume 146.

C. DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY and the CORPORATE SHERIFF'S DEPARTMENT and Defendant's Elijah M. Smith, Taylor Mickle, and Christopher Eller's acts, as declared and evidenced herein, establish seditious collusion and covinous intent to overthrow and commit treason against the duly ordained and established Constitution FOR the United States of America, and to willfully, knowingly and wantonly cause other damages, injuries, and frauds against the Peace, Dignity and Security of WE THE PEOPLE of the several free, sovereign, independent, Republican States of the Union of States of the United States of America, including but not limited to the de jure Republic of the "State of Arizona."

142. DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY and the CORPORATE SHERIFF'S DEPARTMENT and Defendant's Elijah M. Smith, Taylor Mickle, and Christopher Eller's actions are illegal, they are directly or indirectly supervised, directed, controlled, financed and subsidized by the alien/foreign corporate "Governor" of "The Fund" and "The Bank" a/k/a "Secretary of Treasury" without

foreign agents registration. They are not directed, controlled, financed and subsidized by the de jure United States nor the de jure "State of Arizona" which caused damage to Plaintiff, in an amount to be proven at trial.

XVI.

**Sixteenth Cause of Action.**

22 U.S.C. §262c:

Commitments for United States contributions to international financial institutions fostering economic development in less developed countries; continuation of participation

22 U.S.C. §285g:

Status, immunities, and privileges.

22 U.S.C.A. §287j:

Participation in future United Nations borrowing; promotion of pattern of financing to avoid future large-scale deficits; report to Congress.

143. Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs.

144. 22 U.S.C.A. Foreign Relations and Intercourse §262c: Commitments for United States contributions to international financial institutions fostering economic development in less developed countries; continuation of participation. 22 U.S.C.A. Foreign Relations and Intercourse §285g: Status, immunities, and privileges. 22 U.S.C.A. §287j: Participation in future United Nations borrowing; promotion of pattern of financing to avoid future large-scale deficits; report to Congress. Congress has appropriated, transferred and converted vast sums to Foreign Powers according to 22 U.S.C.A. §262c, and has entered into numerous Foreign Taxing Treaties (conventions) see 22 U.S.C.A. §285g, 22 U.S.C.A. §287j and other Agreements, which are solicited and collected pursuant to 26 I.R.C. §610(k)(4) by DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT and Defendant's Elijah M. Smith, Taylor Mickle, and Christopher Eller, et al.,

A. Other documentary evidence will be submitted during discovery, this should absolve further doubt as to the true character of DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT and Defendant's Elijah M. Smith, Taylor Mickle, and Christopher Eller.

B. Such Constitutional restrictions as "For the general Welfare and common defense of the United States" according to the Constitution (1787), Preamble, Article I, Section 8, Clause 1) aren't applicable to the covinous usurpers and their delusions, and the fraudulent rehypothecated debt credit will be merely added to the insolvent nature of the central planning in peace time acts of *mixed war intentionally* continuing the supposed "emergency", and the reciprocal socio/economic repercussions laid upon resent and future generations.

145. DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT and Defendant's Elijah M. Smith, Taylor Mickle, and Christopher Eller's actions are illegal, they are punishable as a principal which caused damage to Plaintiff, in an amount to be proven at trial.

XVII.

**Seventeenth Cause of Action.**

22 U.S.C.A. Foreign Relations and Intercourse §263a:

International Criminal Police Organization.

146. Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs.

147. 22 U.S.C.A. Foreign Relations and Intercourse §263a. International Criminal Police.

148. DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT and Defendant's Elijah M. Smith, Taylor Mickle, and Christopher Eller, et al., individually and jointly, and in combination and collusion together and with each other, are agents of the "International Criminal Police Organization", and as such solicit and collect information for 150 Foreign Countries and Powers, or political subdivisions thereof according to The United States Government Manual, 1990/91, page. 385, 22 U.S.C.A. 263a, and The Ron Paul Money Book, pages 250-251.

149. DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT and Defendant's Elijah M. Smith, Taylor Mickle, and Christopher Eller's actions as agents of the "International Criminal Police Organizations" are illegal, they are punishable as a principal which caused damage to Plaintiff, in an amount to be proven at trial.

XVIII.

**Eighteenth Cause of Action.**

22 U.S.C.A. Foreign Relations and Intercourse §284:
Acceptance of membership by United States in
International Development Association.

150. Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs.

151. 22 U.S.C.A. Foreign Relations and Intercourse §284. Acceptance of membership by United States in International Development Association. DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT and Defendant's Elijah M. Smith, Taylor Mickle, and Christopher Eller are under the control of The Agency For International Development which is an International paramilitary operation according to Department Of The Army Field Manual, (1969 Edition) FM 41-10, pages 1-4, Sections 1-7(b) and pages 1-6, Section 1-10(7)(c)(1), 22 U.S.C.A. 284), which includes:

A. Which includes such activities as *"Assumption of full or partial executive, legislative and judicial authority over a country or area"* which is accomplished through central planning a mixed war in times of peace through paramilitary operations.

B. Which includes being under foreign paramilitary control through central planning over the de facto CORPORATE STATE OF ARIZONA, its departments and agencies, acting under purported doctrines of "Emergency" and "Necessity", which has no law (See: Plowden's 18, 15 Viner's Abridgments 534, 22 Viner's Abridgments 540),

C. Which includes flying the Executive/Admiralty (union jack) flag in opposition to the National flag (See: Executive Order No. 10834, Part II, 4 U.S.C.A. 1, Executive Order No. 12778). This is why the Executive Seal is displayed in opposition to that of the Judicial Seal in the de facto foreign admiralty maritime courts of a.k.a the CORPORATE STATE COURTS. (See: Seals And Other Devises, GPO Publication 250.3, Executive - page 22, Judicial - page 57).

D. Which includes international principal(s) centrally planned paramilitary mixed war in time of peace which is directed, controlled and financed by International Organizations with intents, purposes and activities including complete control of "Public Finance", i.e. "control, supervision, and audit of indigenous fiscal resources; budget practices, taxation, expenditures of public funds, currency issues, and banking agencies and affiliates. (See: Field Manual 41-10, pages 2-30 to 2-31, Section 2-51)

E. Which complies with "Silent Weapons For Quiet Wars", Research Technical Manual, TM-SW7905.1, a declaration of war upon the American people, "Silent Weapons For Quiet Wars" which is in itself is a declaration of intent, it is a technically formal declaration of domestic war.

F. Which is are part of the International "Civil Affairs" operation according to the 1985 Edition of the Department Of Army Field Manual, FM 41-10 which describes the International "Civil Affairs" operations. At page 3-6, it is admitted that the A,I.D. is autonomous and under direction of the International Development Cooperation Agency at 22 U.S.C.A. 284, and at page 3-8 that the operation is *"paramilitary"* according to the Department Of Army Field Manual, FM 41-10 (1985 Ed.)

F. Which complies with the International Organization(s) intents and purpose which is to promote, implement and enforce a "Dictatorship Over Finance in the United States," as stated in Senate Report No. 93-549, page 186).

152. DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT and Defendant's Elijah M. Smith, Taylor Mickle, and Christopher Eller's actions are illegal, they are punishable as a principal which caused damage to Plaintiff, in an amount to be proven at trial.

XVIIII.

**Nineteenth Cause of Action.**

22 U.S.C.A. Foreign Relations and Intercourse §286a:

Appointments (a) Governors and executive directors; term of office.

153. Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs.

154. 22 U.S.C.A. Foreign Relations and Intercourse §286a**,** Appointments (a) Governors and executive directors; term of office. 26 U.S.C.A. Internal Revenue Code §611(c)(1).

155. DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT and Defendant's Elijah M. Smith, Taylor Mickle, and Christopher Eller are directly or indirectly supervised, directed, controlled, financed and subsidized by the alien/foreign corporate "Governor" of "The Fund" and "The Bank" a/k/a "Secretary of Treasury" evidenced by Public Law 94-564, Legislative History, page 5942, U.S. Government Manual 1990/91, pages 480 & 481, Treasury Delegation Order No.150-10.

156. DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT and Defendant's Elijah M. Smith, Taylor Mickle, and Christopher Eller's actions are illegal, they are directly or indirectly supervised, directed, controlled, financed and subsidized by the alien/foreign corporate "Governor" of "The Fund" and "The Bank" a/k/a "Secretary of Treasury" which caused damage to Plaintiff, in an amount to be proven at trial.

XX.

**Twentieth Cause of Action.**

22 U. S. C. Foreign Relations and Intercourse §286g:

Jurisdiction and Venue of Actions.

157. Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs.

158. 22 U. S. C. Foreign Relations and Intercourse §286g. Jurisdiction and venue of actions.

159. DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT "Parties in Interest" is the International Monetary Fund and World Bank it is not the de jure government the "State of

Arizona".

A. The de facto government, the "CORPORATE STATE OF ARIZONA" by becoming a corporator, layed down its sovereignty and takes on that of a private citizen.

B. The de facto "CORPORATE STATE OF ARIZONA" can exercise no power which is not derived from the corporate charter of the "World Bank" and "The Fund".

C. The real character of the party in interest is not the de jure "State of Arizona", but "The International Monetary Fund" and "World Bank" according to the Constitution FOR The United States of America, Article I, Section 8, Clause 3, "To regulate Commerce with foreign Nations, and among the several States,..."

160. DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT and Defendant's Elijah M. Smith, Taylor Mickle, and Christopher Eller's continual commission and enforcement of such acts, acts according to central planning and mixed war in time of peace to suspend the Constitutions both federal and state, are committed under false and fraudulent pretenses and impersonations, colors, fraud, liens, assessment, dispossession, alienation, seizures, force, threat of force and expropriation and many times are done under "Letters of Marque and Reprisal", i.e. "recapture" in violation of:

A. In violation of Title 18 United States Code Annotated, Crimes and Criminal Procedure, §219.

B. In violation of 18 United States Code Annotated, Crimes and Criminal Procedure, §912.

C. In violation of 18 United States Code Annotated, Crimes and Criminal Procedure, §951.

D. In violation of 18 United States Code Annotated, Crimes and Criminal Procedure, §241.

E. In violation of 18 United States Code Annotated, Crimes and Criminal Procedure, §1001.

F. In violation of 18 United States Code Annotated, Crimes and Criminal Procedure, §645,

H. In violation of 18 United States Code Annotated, Crimes and Criminal Procedure, §654.

I. In violation of 18 United States Code Annotated, Crimes and Criminal Procedure, §§2384, 2385, and

J. In violation of Title 31 U.S.C.A, Money and Finance §5323.

160. DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT and Defendant's Elijah M. Smith, Taylor Mickle, and Christopher Eller's continual commission and enforcement of such acts, acts according to central planning and mixed war in time of peace to suspend the Constitutions both federal and state, are committed under fraud.

A. Such principles as "Fraud and Justice never dwell together" are too high of a though concept, as is "Due Process", "Just Compensation", and "Justice" itself. (See: Wingate's Maxims 680)

B. And "A right of action cannot arise out of fraud" (See: Broom's Maxims 297, Cowper's Reports 343, 5 Scott's New Reports 558, 10 Mass. 276, 38 Fed. 800).

6. DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT and Defendant's Elijah M. Smith, Taylor Mickle, and Christopher Eller have dishonored Carolin Isabelle Hauser.

A. Honor is earned by honesty and integrity, not under false and fraudulent pretenses, nor will the color of the cloth one wears, nor fine spun illicit prevarications, cover-up and conceal the usurpations, lies, frauds, trickery and deceit. Mushroom don't do well in the light. When black is fraudulently declared to be white, not all will live in darkness.

B. As astutely observed by Will Rogers, *"there are men running governments who shouldn't be allowed to play with matches",* and is as applicable today as Jesus' statements

about Lawyers. (See: Bible, Luke 11:42, Luke 11:52).

161. DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY or CORPORATE SHERIFF'S DEPARTMENT and Defendant's Elijah M. Smith, Taylor Mickle, and Christopher Eller's actions are illegal, they are directly or indirectly supervised, directed, controlled, financed and subsidized by the alien/foreign corporate "Governor" of "The Fund" and "The Bank" a/k/a "Secretary of Treasury" which caused damage to Plaintiff, in an amount to be proven at trial.

XXI.

**Twenty-First Cause of Action.**

18 U.S.C.A. Crimes & Criminal Procedure §7. Fraudulent Forcible Extraditions

162. Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs.

163. 18 U.S.C.A. §7. Special maritime and territorial jurisdiction of the United States defined. Defendant's Elijah M. Smith, Taylor Mickle, and Christopher Eller's actions heretofore wrongfully and maliciously instituted and commenced by Elijah M. Smith, Taylor Mickle, and Christopher Eller as Foreign Agents against this Citizen of the several Republican States, are fraudulent forcible extraditions under and to Foreign Jurisdictions according to 18 U.S.C.A. §7 (See: U.S. verses Rauscher, 119 U.S. 407 (1886), 7 S. Ct. 244, 30 L.Ed., 425, U.S. verses Vreeken, 803 F.2d 1085) under and to Foreign Jurisdictions.

164. As a direct, proximate (the defendants are the proximate cause of their own injuries), and foreseeable result of these Defendants' fraudulent forcible extraditions Plaintiff suffered damages in an amount according to proof at the time of trial.

XXII.

**Twenty-Second Cause of Action.**

8 U.S.C.A. Aliens and Nationality §1481:
Loss of nationality by native-born or naturalized citizen;
voluntary action; burden of proof; presumptions.

165. Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs.

166. 8 U.S.C.A. Aliens and Nationality §1481. Loss of nationality by native-born or naturalized citizen; voluntary action; burden of proof; presumptions. 8 U.S.C. §1481 is one of the controlling statutes on expatriation, as is 22 U.S.C.A., Foreign Relations & Intercourse §§§611, 612, Registrations Statements, 613, Exemptions and 50 U.S.C.A., War & National Defense §781, Internal Security, and unless Plaintiff expatriates and wears the badge of the United Nations Organizations, Plaintiff is to be selectively and continually subjected to fraud, extortion, dispossession, embezzlement, alienation, expropriation and *extradited* into *Foreign Jurisdictions,* maliciously prosecuted under undisclosed Foreign Laws, or any number of other injuries, damages and evils which manifest themselves from the arbitrary minds of DOES 1-99 and Defendant's Elijah M. Smith, Taylor Mickle, and Christopher Eller who have forsaken and disavowed their allegiance to the Nation, State and People through central planning by waging mixed war through their paramilitary actions in time of peace!

167. As a direct, proximate (the defendants are the proximate cause of their own injuries), and foreseeable result of these defendants' fraud, extortion, dispossession, embezzlement, alienation, expropriation and *extradited* into *Foreign Jurisdictions,* maliciously prosecuted under undisclosed Foreign Laws, Plaintiff suffered damages in an amount according to proof at the time of trial.

XXIII

**Twenty-Third Cause of Action.**

Battery

168. Plaintiffs re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs.

169. Defendants Elijah M. Smith, Taylor Mickle, and Christopher Eller acted with an intent to cause harmful and/or offensive contact with the person of Carolin Isabelle Hauser and the intended harmful or offensive contact did in fact occur.

170. Defendant Elijah M. Smith arrested Carolin Isabelle Hauser. I said "No!" Then in an attempt to get help I ran toward my daughter and David. .... Defendant Elijah M. Smith picked me up by my arms which were behind my back them slammed me against the ground face down in the gravel and dirt, slammed me to the ground, and pinned me down by use of his full body weight then all three Elijah M. Smith, Taylor Mickle, and Christopher Eller jumped on me! I estimate their combined weight was approximately 600 pounds. Once again, I remember my body and face hitting the dirt and gravel, Elijah M. Smith **had grabbed my arms (behind my back) tackled me to the dirt and rocks face first, so I couldn't brace the fall with my hands by then** Elijah M. Smith, Taylor Mickle, and Christopher Eller **were all on top of me I estimate about 600 pounds of human bodies. I mention this twice because of the impact this has on me!** This physical extreme excessive force and violence did result in my near death experience it did result in physical injuries. See **Exhibits A & B** attached hereto and made a part hereof.

171. Defendants Elijah M. Smith, Taylor Mickle, and Christopher Eller acted in their official capacity and in the scope of their employment as deputies of the CORPORATE YAVAPAI COUNTY SHERIFF DEPARTMENT.

172. The harmful and offensive contact was not privileged nor consented to and was excessive, unreasonable, and done with deliberate indifference to my rights and safety.

173. As a result of Defendants Elijah M. Smith, Taylor Mickle, and Christopher Eller's intent to cause harmful and offensive contact with the person of Carolin Isabelle Hauser, and the fact that the intended harmful and offensive contact did in fact occur while I was unarmed out in the open with no place to go. The Plaintiff suffered damages. Said damages are currently in excess of the jurisdictional minimum of this court and include general and special damages according to proof at the time of trial.

XXIV.

**Twenty-Fourth Cause of Action.**

Negligence

174. Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs.

175. Defendants DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY and the CORPORATE SHERIFF'S DEPARTMENT, and Elijah M. Smith, Taylor Mickle, and Christopher Eller:

A. Had a duty to use reasonable care when interacting with me an unarmed citizen tackled to the ground face down in the dirt and gravel, specifically with my hands behind my back.

B. Had a duty to use reasonable care in determining whether reasonable suspicion and/or probable cause existed to detain and arrest me without a warrant.

C. Had a duty to use reasonable care in performing an arrest on this citizen rather these deputies Elijah M. Smith, Taylor Mickle, and Christopher Eller's brutal attack on me literally picked me up by my arms behind my back then slammed face down in the dirt and gravel forcing the air out of my body cavity which was unnecessary and excessive force.

D. Had a duty to use reasonable care when, after detaining and disabling Carolin Isabelle Hauser, continuing to use force against her.

176. These defendants breached their duty of care and caused harm to Plaintiff, including

physical pain and suffering, terror, mental anguish, humiliation, degradation, damage to reputation, and financial loss.

177. Defendants Elijah M. Smith, Taylor Mickle, and Christopher Eller acted in their official capacities and in the scope of their employment as deputies for the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY and the CORPORATE SHERIFF'S DEPARTMENT.

178. As a direct, proximate (the defendants are the proximate cause of their own injuries), and foreseeable result of these defendants' breach of their duty of care, Plaintiff suffered damages in an amount according to proof at the time of trial.

XXV.

**Twenty-Fifth Cause of Action.**

Negligent Training and Supervision

179. Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs.

180. Defendants DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY and the CORPORATE SHERIFF'S DEPARTMENT:

A. Had a duty to use reasonable care in the training and supervision of its employees, including Defendants Elijah M. Smith, Taylor Mickle, and Christopher Eller.

B. Had a duty to train their employees, deputies and officers in the proper means of interacting with citizens when they are unarmed, disabled on the ground face down, including this slight of build Plaintiff who is 127 pounds, unarmed, and in her pajamas!!!

C. Had a duty to properly train their employees, deputies and officers to avoid exposing citizens to illegal arrests and/or avoid exposing them to the risk of excessive force.

D. Had a duty to ensure that incidents of use of force by their employees, deputies and officers are properly investigated, supervised, and if necessary, disciplined.

E. Had a duty to supervise their employees, deputies and officers to ensure that citizens are not exposed to harm from an officer(s) that has shown repeated disregard for the Constitution and the rights and safety of others.

181. Defendants DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY and the CORPORATE SHERIFF'S DEPARTMENT:

A. Had a duty to properly investigate incidents of use of force and impose discipline on employees, deputies and officers that violate regulations and state and federal laws.

B. Had a duty to ensure that their employees, deputies and officers are adequately trained to interact with individuals who have been disabled.

C. Had a duty to adequately supervise their employees, deputies and officers to protect against violations of the Constitutional rights of disabled individuals and citizens generally.

182. Defendants DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY and the CORPORATE SHERIFF'S DEPARTMENT: breached their duty of care and caused harm to Plaintiff, including physical pain and suffering, terror, mental anguish, humiliation, degradation, damage to reputation, and financial loss.

183. As a direct, proximate (the defendants are the proximate cause of their own injuries), and foreseeable result of these defendants' breach of their duty of care, Plaintiff suffered damages in an amount according to proof at the time of trial.

XXVI.

**Twenty-Sixth Cause of Action.**

18 U.S.C. Crimes and Criminal Procedures §2340:

The "Torture Act" and The Anti-Torture Act of 1996.

184. Plaintiff re-allege and incorporates herein by reference each and every allegation contained

in the preceding paragraphs.

185. 18 U.S.C. Crimes and Criminal Procedures §2340 (the "Torture Act") and the Anti-Torture Act of 1996.

A. Public officials Elijah M. Smith, Taylor Mickle, and Christopher Eller while acting under color of law committed War Crimes of "torture" against Carolin Isabelle Hauser they intended to inflict severe physical and mental pain and suffering upon Plaintiff within their custody and physical control inside the United States by their paramilitary actions.

B. Carolin Isabelle Hauser's severe mental pain and suffering created prolonged mental harm resulting from Elijah M. Smith, Taylor Mickle, and Christopher Eller's intentional infliction of severe physical pain and suffering.

C. Their "paramilitary" central planning procedures were calculated to disrupt profoundly Carolin Isabelle Hauser's senses and personality; through their sanctioned yet not lawful central planning procedures of force and violence Plaintiff faced the reality of imminent death; was subject to death by their physical attack, suffering severe physical pain through their central planning their paramilitary procedures which disrupted profoundly my senses and personality.

D. Plaintiff alleges that DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY and the CORPORATE SHERIFF'S DEPARTMENT and Elijah M. Smith, Taylor Mickle, and Christopher Eller are "agents of a foreign principal(s)" evidenced by their public policy activities which create the agency relationship where their acts as agents, employees, representatives or servants because they are under the control of, a foreign principal(s), by their foreign connections by their public policy activities performed as agents for foreign interests, by their making of change as it relates to de jure Public Law to de facto Public Policy which is indirect control exerted by their foreign principal(s) over their agents as "paramilitary" operations trained in foreign espionage systems of force and violence whose organizational structure, tactics, training, subculture, and functions are military, yet not formally a part of America's armed forces yet sanctioned by the de facto CORPORATE STATE OF ARIZONA, as well as the de facto CORPORATE YAVAPAI COUNTY, and the CORPORATE YAVAPAI COUNTY SHERIFF'S DEPARTMENT.

E. Plaintiff through discovery shall demand that DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY and the CORPORATE SHERIFF'S DEPARTMENT and Elijah M. Smith, Taylor Mickle, and Christopher Eller produce all their central planning paramilitary powers and authorities, their duties and functions, together with all property, books, records, and unexpended balances of appropriations for carrying out foreign functions devolving on them.

F. DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY and the CORPORATE SHERIFF'S DEPARTMENT and Elijah M. Smith, Taylor Mickle, and Christopher Eller shall divulge in discovery all rules, regulations, statutes and forms which have been allegedly issued which are in effect which shall continue in effect until modified, superseded, revoked or repealed.

186. DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY and the CORPORATE SHERIFF'S DEPARTMENT and Defendant's Elijah M. Smith, Taylor Mickle, and Christopher Eller's actions are illegal, they are directly or indirectly supervised, directed, controlled, financed and subsidized by the alien/foreign corporate "Governor" of "The Fund" and "The Bank" a/k/a "Secretary of Treasury" without foreign agents registration. They are not directed, controlled, financed and subsidized by the de jure United States nor the de jure "State of Arizona." They have while acting under color of law committed War Crimes of "torture" against Carolin Isabelle Hauser they intended to inflict severe physical and mental pain and suffering upon Plaintiff within their custody and physical control inside the

United States by their paramilitary actions which caused damage to Plaintiff, in an amount to be proven at trial.

187. Defendant's Elijah M. Smith, Taylor Mickle, and Christopher Eller commit false imprisonment when they restrained Plaintiff's daughter Maja who is a child under the age of seventeen under the following conditions which are:

A. Carolin Esabelle Hauser is Maja's guardian responsible for her general supervision and my child's welfare I did not consented to her restraint, detention and terrorization.

B. I am Maja's natural mother, and Defendant's Elijah M. Smith, Taylor Mickle, and Christopher Eller's sole purpose was to assume control of Maja without my consent without a court order which actions caused damage to Plaintiff, in an amount to be determined at trial.

**Conclusion –**

**The Neurosis of Extreme Conformity & Lock-Stopped-Conformity!**

188. Plaintiff Carolin Isabelle Hauser was born and raised in Germany, my personal back ground is that I (my family) lost half of the generation that was in their thirties during World War II (my great grand parents) were subjected to excessive force and violence by the by the partisan Communist Regime (their equivalent of the Nazi Secret State Police) who delivered them to concentration camps where they were tortured finally to be beat to death, or died from the harsh elements of weather for example in that war. My ancestors were Germans living in, what was then Jugoslavia. Welcomed once during peacetime, my family during war were now seen as the enemy according to marshal law like Hitler's War Powers Acts marshal law, which suspended all public law, which was their national Constitution. *Just like the Nazi's the Communist Partisan had fallen prey to so called "Mass Neurosis!"* Because of this I have an intrinsic instinct for what's right and very little tolerance for what's not right.

189. On Hitler's orders, Himmler established and controlled the vast network of Nazi concentration camps. As its head, Himmler was responsible for the murder of 6 million Jews, between 200,000 & 500,000 Roma (Gypsies), and untold millions of other victims (mostly Poles and Soviet/Russian citizens). From 1943 onwards, Himmler was *both* Chief of German Police and Minister for the Interior, overseeing both internal and external Reich police and security forces, including the Gestapo (the Secret State Police).

190. Plaintiff wants to be understood as to how I feel; I will now quote a story from (The Nature of Prejudice by Gordon W. Allport, a classic study of the roots of discrimination. (Pages 288-89) "Neurosis" is a mild psychiatric disorder characterized by anxiety, depression, and "hypochondria".

191. Following is the end of Gordon W. Allport's classic story of the roots of discrimination that engender *"Lock-Step-Conformity of Incredible Tenacity."*

192. "It is still difficult for us to believe the story of the Auschwitz Concentration Camp. The tale is the zenith of horror. ***Between the summer of 1941 and the end of World War II supposedly a half million men, women, and children were murdered there.*** Supposedly, the gas chambers and ovens were working 24 hours a day, exterminated as many as 10,000 human beings daily. The victims were mostly Jews, and the ***deliberate genocide*** represented what Hitler had called the ***"final solution"*** **of the Jewish problem**. Gold from their teeth and their rings was melted down and sent to the Reich bank. Hair from the women's heads was salvaged for commercial purposes."

193. "A forty-six-year-old colonel of the German Army, Rudolf Hoess, was commandant of the camp, and when testifying at the Nurnberg trial. He readily admitted these facts. He said *he had received orders* in the summer of 1941 when Himmler called for him and explained, "The Fuhrer has *ordered* the final solution of the Jewish question – and *we have to carry out this task.* For

reasons of transportation and isolation, I have picked Auschwitz for this. *You now have the hard job* of carrying this out!"

194. "Asked how he felt when receiving such grim orders, Hoess *denied any feeling*. He had answered, "Jawohl," to Himmler and *set about obediently* to carry through the endless murders, just *because two superior officers,* first Hitler and then Himmler, *had told him to do so. When pressed to say* whether the Jews whom he murdered deserved such a fate, *he complained that such questions didn't mean anything.* **"Don't you see, *we SS Men were not supposed to think about these things; it never even occurred to us." And besides, it was something already taken for granted;"*** he said, "We just never heard anything else … it was not only newspapers like the Sturmer, but it was everything we ever heard. Even our military and *ideological training took for granted that we had to protect* Germany from the Jews … ***It only started to occur to me after the collapse that maybe it was not quite right, after I had heard what everybody was saying."***

195. "Hoess had put *obedience to his superior officers above everything else* – above knowing we are all magnificent spirit beings, above knowing that we are all powerful creators, above sympathy, above reason, above logic and above common sense. "You can be sure that it was not always a pleasure to see those corpses and smell the continual burning. But Himmler *had ordered it* and had even *explained the necessity* and I really never gave much thought to whether it was wrong. *It just seemed a necessity."*

196. "The case of Hoess demonstrates a neurotic degree of *conformity.* The loyalty and *obedience involved* was proponent over every rational and humane impulse. The frenzy of *conformity* to a Nazi folk-belief and TO the Fuhrer's *orders was a vital factor in the personality of* Hoess – *compulsive obedience.* Yet, one cannot suppose Hoess to be a madman; there were too many other SS guards who would have done the same thing with as little remorse. We can only learn from this case that *fanatic ideology* may *engender conformity of incredible tenacity."* This is the end of Gordon W. Allport's classic story of the roots of discrimination that engender *lock-step-conformity of incredible tenacity.*

197. Stated implicit faith belongs to fools. And it might be added that blind obedience belongs to rogues and not to honest men. We must have reasons why we ought to obey, why we ought to adopt the opinions of others, why we ought to yield to their judgment. Legal and Political Hermeneutics by Leaber, Section 3 Algernans Cidney's discourse concerning government.

198. "Ignorance more frequently begets confidence than does knowledge." Charles Darwin (1809-1882) 1871). "Believing is easier than thinking. Hence so many more believers than thinkers." Bruce Calvert. "There is nothing so powerful as truth, and often nothing so strange." Daniel Webster.

199. Were Defendant's Elijah M. Smith, Taylor Mickle, and Christopher Eller just conforming… just discriminating against Carolin Isabelle Hauser? Were they just lock-step-conformist of incredible tenacity who followed their superiors? Was their obedience to superior DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY and the CORPORATE SHERIFF'S DEPARTMENT or was their obedience to the Constitutional Public Law and Public Procedures? Let mature circumspect of the jury decide.

**Prayer For Relief.**

Plaintiffs pray for judgment against defendants as follows:

1. General and compensatory damages in an amount according to proof;
2. Punitive and exemplary damages;
3. Civil penalties as provided by law;
4. Declaratory and injunctive relief remedying the unconstitutional statutes, the continued policies, customs and practices governing how DOES 1-99 including the de facto CORPORATE STATE OF ARIZONA, CORPORATE YAVAPAI COUNTY and the CORPORATE SHERIFF'S DEPARTMENT and Defendant's Elijah M. Smith, Taylor Mickle, and Christopher Eller's interactions with citizens;
5. Counsel of Choice fees under 42 U.S.C. §12205 and 42 U.S.C. §1983;
6. Costs of suit;
7. And for such other and further relief as the Court may deem proper.

Dated: June 12, 2020

Respectfully Submitted,

Carolin Isabelle Hauser

Witnessed By:

Steven Lee McMillan                    Philip James Clayton

**CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that I did hand deliver a true and correct copy of the foregoing document, **Carolin Isabelle Hauser's Complaint against Elijah M. Smith, Taylor Mickle, and Christopher Eller,** on this 12th day of June, 2020 to the UNITED STATES DISTRICT COURT DISTRICT OF ARIZONA COURT CLERK located at, 401 W. Washington Street, Phoenix, Arizona 85003.

Steven Lee McMillan

# Exhibit A-1- Verde Valley Medical Center Emergency Room Report-P.1

Verde Valley Medical Center
269 S CANDY LANE
COTTONWOOD, AZ 86326-4158
(928) 639-6000

Patient: HAUSER, CAROLIN I
MRN: 55-558-25-90
SEX: F
AGE: 41 years DOB: 6/30/1978
FIN: 4025451
ADMIT: 12/14/2019
LOCATION: ED VVMC

**Transcribed Documents**

| | |
|---|---|
| DOCUMENT NAME: | VV ER Report |
| SERVICE DATE/TIME: | 12/14/2019 22:20 MST |
| RESULT STATUS: | Modified |
| PERFORM INFORMATION: | MUNOZ MD,JOHNATHON RAY (12/15/2019 01:30 MST); MUNOZ MD,JOHNATHON RAY (12/14/2019 23:46 MST) |
| SIGN INFORMATION: | MUNOZ MD,JOHNATHON RAY (12/15/2019 01:30 MST); MUNOZ MD,JOHNATHON RAY (12/15/2019 01:15 MST) |

**Addendum by MUNOZ MD, JOHNATHON RAY on December 15, 2019 1:30 MST**
EKG, time 0 125, ventricular rate 58, sinus bradycardia, normal PR, normal QRS, normal QT, normal axis. Nonspecific ST changes, ED interpretation

*Electronically Signed On: 12/15/19 01:30*

*MUNOZ MD, JOHNATHON RAY*

**General Medical**

Patient: **HAUSER, CAROLIN** **MRN: 55-558-25-90** **FIN: 4025451**
Age: **41 years** Sex: F DOB: **6/30/1978**
Associated Diagnoses: **None**
Author: **MUNOZ MD, JOHNATHON RAY**

**Basic Information**

**Additional Information:** Chief Complaint from Nursing Triage Note : Chief Complaint

| | | |
|---|---|---|
| 12/14/2019 22:08 MST | Chief Complaint | pain neck, jaw, chest injury, pt was restrained down by PD around 8 am during a domestic dispute |
| 12/14/2019 21:56 MST | Chief Complaint | pain neck, jaw, chest injury, pt was restrained down by PD around 8 am during a domestic dispute |

**History of Present Illness**

The patient presents with Patient reports being arrested at approximately 8 AM the morning of December 14, 2019. She states she was thrown to the ground during the arrest. After being placed in jail and released patient presented to the ED with complaint of neck fullness, points to the anterior aspect of the neck, pain in the anterior neck and fullness in the chest. Describes the chest is a tight sensation. Patient does not take anticoagulants or any other medications. She is a non-smoker. Pain is nonradiating., She denies alcohol intake during and immediately preceding the incident. She denies nausea vomiting, retching. and Patient reports the incident involved a verbal altercation with her male significant other which led to him biting her on her left breast and then she began striking him to get him to leave her alone. She states at that time she called 911 and reported domestic incident. Upon arrival the police were questioning both at which time she was told to sit in the police car, she refused, was told them that she was arrested and she began to run. She was caught, thrown to the ground.. The course/duration of symptoms is constant.

Printed: 12/18/2019 11:52 MST Page 1 of 19 Patient: HAUSER, CAROLIN I
Report Request ID: 93977553 MRN: 55-558-25-90

# Exhibit A-2- Verde Valley Medical Center Emergency Room Report-P.6

**Verde Valley Medical Center**

269 S CANDY LANE
COTTONWOOD, AZ 86326-4158
(928) 639-6000

Patient: **HAUSER, CAROLIN I**

MRN: **55-558-25-90**
SEX: F
AGE: 41 years DOB: 6/30/1978
FIN: 4025451
ADMIT: 12/14/2019
LOCATION: ED VVMC

**Transcribed Documents**

**Diagnosis**
Barotrauma
Mediastinal emphysema

**Calls-Consults**

- 12/14/2019 23:55:00 , I consulted FMC transfer line, spoke with Dr. Jones. The trauma surgeon was placed on the phone. There was some discussion as to whether or not there was esophageal tear, the definitive study would be esophagram which is not available at this time. Trauma surgeon felt that if there was no esophageal tear the patient could be observed in this hospital, Verde Valley Medical Center. If there was esophageal tear patient would have to be transferred to higher level of care, i.e. Phoenix. I consulted our general surgeon on-call, Dr. Azar who stated he did not feel comfortable observing the patient at Verde Valley Medical Center..
- 12/15/2019 00:05:00 , AZAR DO, NABIEL JOE, General surgeon on call. Stated he does not feel appropriate and does not feel comfortable watching this patient at Verde Valley Medical Center..

**Plan**

**Condition:** Stable.
**Disposition:** Transfer to other location; Time: 12/15/2019 01:05:00, Facility name: FMC, Accepted by: Dr. Jones, Reason for delay: Pending radiology read.
**Counseled:** Patient, Regarding diagnosis, Regarding diagnostic results, Regarding treatment plan, Patient indicated understanding of instructions.

*Electronically Signed On: 12/15/19 01:15*

*MUNOZ MD, JOHNATHON RAY*

# Exhibit A-3- Verde Valley Medical Center Emergency Room Report-P.9

Northern Arizona Healthcare

Verde Valley Medical Center

269 S CANDY LANE
COTTONWOOD, AZ 86326-4158
(928) 639-6000

Patient: HAUSER, CAROLIN I

MRN: 55-558-25-90
SEX: F
AGE: 41 years DOB: 6/30/1978
FIN: 4025451
ADMIT: 12/14/2019
LOCATION: ED VVMC

**Transcribed Documents**

**Reexamination/ Reevaluation**

Vital signs

results included from flowsheet : ED Vital Signs.

| | | |
|---|---|---|
| 12/15/2019 2:51 MST | Cuff BP Systolic | 104 mmHg |
| | Cuff BP Diastolic | 56 mmHg |
| | Heart Rate | 59 bpm |
| | Respiratory Rate | 16 br/min |
| | Oxygen Saturation | 97 % |
| | Oxygen Delivery | Room air |
| 12/15/2019 1:48 MST | Vital Signs Note | pt ambulates independently to restroom without distress. |

**Impression and Plan**

**Diagnosis**

Mediastinal emphysema
Barotrauma

**Calls-Consults**

- 12/15/2019 02:14:00 , JONES MD, TRAVIS LEROSS, Dr Jones discussed the patient with Dr. DJ Green the trauma surgeon on-call at Flagstaff Medical Center who initially cared to have accepted the patient but then realized that the patient had a denture medical condition which he did not treat. Dr. Green does not repair esophageal injuries. Although the CT scan did not reveal an esophageal injury there is mediastinal air and esophageal injury has not been ruled out by this modality and Dr. DJ Green could not accept the patient for transfer. A second call was made to another surgeon who does repair esophageal injuries and who is currently available. He offered to provide consult for this patient should an esophagram prove a tear. Patient has does been accepted for transfer ER to ER to Flagstaff Medical Center. Accepting doctor for the record is Dr. Travis Jones at 0224..

**Plan**

**Condition:** Guarded.

*Electronically Signed On: 12/15/19 20:49*

---

*SCHLATTER MD, FRANCES C*

# Exhibit A-4- Verde Valley Medical Center Emergency Room Report-P.16

Verde Valley Medical Center

269 S CANDY LANE
COTTONWOOD, AZ 86326-4158
(928) 639-6000

Patient: HAUSER, CAROLIN I

MRN: 55-558-25-90
SEX: F
AGE: 41 years DOB: 6/30/1978
FIN: 4025451
ADMIT: 12/14/2019
LOCATION: ED VVMC

**Radiology**

| Exam Date/Time | Exam | Accession | Ordering Physician |
|---|---|---|---|
| 12/15/2019 00:02 MST | CT Chest wo Contrast | CT-19-0046304 | MUNOZ MD,JOHNATHON RAY |

**Reason For Exam**
(CT Chest wo Contrast) Pneumothorax

**Read**
CT CHEST WITHOUT CONTRAST: 12/14/2019 11:47 PM
ORDERING PROVIDER: JOHNATHON RAY MUNOZ MD

CLINICAL HISTORY: Pneumothorax.

COMPARISON: None.

TECHNIQUE: Computerized tomography without intravenous contrast. All CT scans at Northern Arizona Healthcare are performed using dose modulation techniques as appropriate for the exam performed including automated exposure control, adjustment of the mA and/or kV according to patient size and use of iterative reconstruction technique in accordance with ALARA.

FINDINGS:
Lungs: No consolidation, effusion or pneumothorax.
Mediastinum: Extensive pneumomediastinum without a definitive source. Emphysema extends into the soft tissues of the neck. No adenopathy.
Heart: Normal. No pericardial effusion.
Aorta: No aneurysm. No significant atherosclerosis.
Musculoskeletal: Normal for age.
Upper abdomen: Normal.

IMPRESSION: Pneumomediastinum with emphysema extending into the neck.

A concordant preliminary report was provided by Alta Vista radiology.

James Skrocki MD
*******Final*******

*Dictated by:* SKROCKI MD, JAMES A.
*Dictated DT/TM:* 12/15/2019 11:07
*Signed by:* JAS
*Signed Time* 12/15/2019 11:07
*Technologist:* LM
*Workstation:* FMRADPACS06

# Exhibit A-5-Verde Valley Medical Center Emergency Room Report-P.17

Verde Valley Medical Center

269 S CANDY LANE
COTTONWOOD, AZ 86326-4158
(928) 639-6000

Patient: HAUSER, CAROLIN I

MRN: 55-558-25-90
SEX: F
AGE: 41 years DOB: 6/30/1978
FIN: 4025451
ADMIT: 12/14/2019
LOCATION: ED VVMC

## Radiology

| Exam Date/Time | Exam | Accession | Ordering Physician |
|---|---|---|---|
| 12/14/2019 23:10 MST | CT Neck Soft Tissue w/ contrast | CT-19-0046299 | MUNOZ MD,JOHNATHON RAY |

**Reason For Exam**
(CT Neck Soft Tissue w/ contrast) Injury, neck

**Read**
CT NECK SOFT TISSUE WITH CONTRAST: 12/14/2019 10:53 PM
ORDERING PROVIDER: JOHNATHON RAY MUNOZ MD

CLINICAL HISTORY: Injury, neck.

COMPARISON: None.

TECHNIQUE: Computerized tomography with intravenous contrast. All CT scans at Northern Arizona Healthcare are performed using dose modulation techniques as appropriate for the exam performed including automated exposure control, adjustment of the mA and/or kV according to patient size and use of iterative reconstruction technique in accordance with ALARA.

FINDINGS: Extensive emphysema in the parapharyngeal and retropharyngeal spaces and extending into the mediastinum. No retropharyngeal abscess or free fluid.
Pharyngeal mucosa: Normal nasopharynx, oropharynx and hypopharynx.
Oral cavity: Normal including tongue and floor of mouth.
Larynx: Normal.
Lymph nodes: No suspicious lymph nodes.
Salivary glands: Normal parotid, submandibular and sublingual glands.
Thyroid: Normal.
Vessels and carotid space: Normal.
Bones: Normal for age.
Other: Clear lung apices

IMPRESSION: Emphysema in the deep soft tissues of the neck and extending into the mediastinum. No definitive source identified.

James Skrocki MD

********Final********

*Dictated by:* *SKROCKI MD, JAMES A*
*Dictated DT/TM:* *12/15/2019 10:02*
*Signed by:* *JAS*
*Signed Time* *12/15/2019 10:02*
*Technologist:* *LM*
*Workstation:* *FMRADPACS06*

Printed: 12/18/2019 11:52 MST Page 17 of 19 Patient: HAUSER, CAROLIN I
Report Request ID: 93977553 MRN: 55-558-25-90

# Exhibit A-6-Emergency Room-Progress Notes-P.1

Progress Notes HAUSER, CAROLIN I - 11-115-91-94

Result Type: Progress Notes
Result Date: December 15, 2019 11:08 MST
Result Status: Auth (Verified)
Result Title: Progress/SOAP Note
Performed By: HELD AGACNP-BC, ALYSA PATRICIA on December 15, 2019 11:24 MST
Verified By: HELD AGACNP-BC, ALYSA PATRICIA on December 15, 2019 11:24 MST
Encounter info: 4025521, FMC, Observation, 12/15/2019 -

**Medications**

Inpatient

bisacodyl, 10 mg= 2 Tab(s), Oral, One Time only
bisacodyl, 10 mg= 1 supp, Rectal, One Time only
Docusate sodium, 100 mg= 1 Cap(s), Oral, BID
Docusate sodium, 283 mg= 1 Each, Rectal, One Time only
Lactated Ringers 1,000 mL, 1000 mL, IV
morphine inj RANGE 1-4 mg, 4 mg, IVPush, Q1HR, PRN
naloxone, 0.4 mg= 1 mL, IVPush, Q2min, PRN
naloxone, 0.04 mg= 0.1 mL, IVPush, Q2min, PRN
ondansetron, 4 mg= 2 mL, IVPush, Q6HRS, PRN
oxyCODONE IR RANGE 5-10 mg, 10 mg, Oral, Q4HRS, PRN
pantoprazole, 40 mg, IVPush Slow, Daily
Saline Flush 0.9%, 10 mL, IVPush, Q8H
Saline Flush 0.9%, 10 mL, IVPush, As Needed, PRN

Home

No active home medications

**Objective**

Vitals & Measurements

**WT:** 61.6 kg

Physical Exam

General: Alert and follows commands
Neuro: Cranial Nerves 2-12 grossly intact
HEENT: Normal cephalic sclera anicteric. No obvious scalp laceration. Pupils 3mm equal and reactive.
Neck: Trachea is midline, No crepitus. No posterior neck tenderness to palpation at the midline.
Cardiac: S1 and S2. No murmur, gallop, rub. +2 pulses in all 4 extremities.
Respiratory:
Abdomen: Soft, non distention, non tender, positive bowel sounds
Extremity: No obvious long bone deformity.

Lab Results

**Labs Last 24 Hours**

No qualifying data available.

Diagnostic Results

XR Esophagus

Esophagus:
Caliber: No narrowing or stricturing. No masses.
Hiatal hernia: None.
GERD: None.
Peristalsis: Normal primary and secondary waves.
Stomach: Normal rugal folds. No ulcerations. No masses.
Duodenum: Normal C-loop anatomy. No ulcerations. No narrowing.
1. No extraluminal contrast identified.
2. Persistent pneumomediastinum.

Printed by: WUNNER RN, KATRINA D
Printed on: 12/16/2019 12:49 MST

# Exhibit A-7-Emergency Room-Progress Notes-P.2

XR UGI w/Air Contrast
Esophagus:
Caliber: No narrowing or stricturing. No masses.
Hiatal hernia: None.
GERD: None.
Peristalsis: Normal primary and secondary waves.
Stomach: Normal rugal folds. No ulcerations. No masses.
Duodenum: Normal C-loop anatomy. No ulcerations. No narrowing.

1. No extraluminal contrast identified.

2. Persistent pneumomediastinum.

**Assessment/Plan**
Patient reports being arrested at approximately 8 AM the morning of December 14, 2019. She states she was thrown to the ground during the arrest. After being placed in jail and released patient presented to the ED with complaint of neck fullness, points to the anterior aspect of the neck, pain in the anterior neck and fullness in the chest. Describes the chest is a tight sensation.

**24 Hour Update:**
Admit 12/15

**I&O (Last 24 Hrs):**
**INTAKE:**
**MEDICATION VOLUME:** 0.00
**TRANSFUSIONS:**
None
**TOTAL INTAKE:** 0.00
**OUTPUT:**
**TOTAL OUTPUT:** 0.00
**FLUID BALANCE:** 0.00

**Problem/injuries:**
Pneumomediastinum
Hyperglycemia
Assault/ DV

**Neuro:**
No acute issues

**Pulm:**
*Pneumomediastinum*
CT neck: Moderate to marked subcutaneous emphysema within the retropharyngeal and parapharyngeal spaces within the neck extending inferiorly into the superior mediastinum. No enhancing mass or abscess.
CT chest: Moderate pneumomediastinum extending superiorly into the neck.
CXR: Pneumomediastinum. No focal consolidation, significant pleural effusion or pneumothorax.
X-ray esophagus: No narrowing or stricturing. No masses.
X-ray upper GI with air/contrast: No extraluminal contrast identified, persistent pneumomediastinum
Monitor

**Cardio:**
No acute issues

**GI:**
No acute issues

**Renal:**
No acute issues

# Exhibit A-8-Emergency Room-Progress Notes-P.3

Progress Notes HAUSER, CAROLIN I - 11-115-91-94

**ID:**
No acute issues

**Endocrine:**
*Hyperglycemia likely r/t trauma/stress*
12/15: A1c pending

**FEN:**
Replace as needed

**MSK:**
No acute issues

**Psych:**
*Assault/ DV*
CSW consulted

**Prophy:**
DVT:
GI: Protonix
BCP
BM:

**Lines:**
PIV

**Incidentals:**
Minimal atraumatic deviation of the nasal septum to the right
Mucous retention cyst/polyp along the floor of the right maxillary sinus

**FRAIL Score: < 65, not appropriate**
F - Tired most/all of the time over past 4 weeks?
R - Difficulty walking up 10 steps?
A - Difficulty walking several hundred yards?
I - 5 or more illnesses?
L - Weight loss > 5%?
Total = /5 (0 = robust, 1 = pre-frail, 2-5 = frail)

Final Reads:
A. Held-12/15

Tertiary:

Time: See same day H & P

**Signature Line**
**Electronically Signed On: 12/15/19 11:24**

HELD AGACNP-BC, ALYSA PATRICIA

Printed by: WUNNER RN, KATRINA D
Printed on: 12/16/2019 12:49 MST

Page 3 of 4

# Exhibit A-9-Emergency Room-Progress Notes-P.4

Progress Notes HAUSER, CAROLIN I - 11-115-91-94

**Completed Action List:**

* Perform by HELD AGACNP-BC, ALYSA PATRICIA on December 15, 2019 11:24 MST
* Sign by HELD AGACNP-BC, ALYSA PATRICIA on December 15, 2019 11:24 MST
* VERIFY by HELD AGACNP-BC, ALYSA PATRICIA on December 15, 2019 11:24 MST

Printed by: WUNNER RN, KATRINA D
Printed on: 12/16/2019 12:49 MST

Page 4 of 4

# Exhibit B-1-Flagstaff-Emergency Room Discharge Summary-P1.

FMC Discharge Summary HAUSER, CAROLIN I - 11-115-91-94

Result Type: FMC Discharge Summary
Result Date: December 16, 2019 10:17 MST
Result Status: Auth (Verified)
Result Title: Discharge Note
Performed By: REED ACNP, JESSICA KATHERINE on December 16, 2019 11:21 MST
Verified By: REED ACNP, JESSICA KATHERINE on December 16, 2019 11:21 MST
Encounter info: 4025521, FMC, Observation, 12/15/2019 -

**Date of Admission**
12/15/2019 08:00:48

**Date of Discharge**

12/16/2019

**Reason for Admission**
This is a 41-year-old female who was involved in a domestic dispute with her significant other. Police were contacted, patient began running away and was reported tackled by police. She reported feeling upper chest and neck fullness. She presented to the ED at Verde Valley Medical Center was found to have soft tissue emphysema and pneumomediastinum.

**Final Diagnoses**
Pneumomediastinum

**Consultants**
None

**Procedures and Diagnostics**
None

**Hospital Course**
Patient was seen at Verde Valley Medical Center and was found to have pneumomediastinum. She was transferred to FMC for further follow-up. CT of the chest and neck showed no obvious injury. Upper GI and esophagram showed no perforation. Right chest x-ray shows resolution of the pneumomediastinum. There is no palpable air noted on examination. No other injuries on examination. Patient department for discharge. She will return to hotel. Clinical social work has seen the patient for domestic violence. There is no obvious bite mark on her breast see no skin break.

**Physical Exam**

Vitals & Measurements
**T:** 36.8 °C (Temporal Artery) **HR:** 50(Peripheral) **RR:** 16 **BP:** 116/69
**SpO2:** 96%
**O2 Flow:** 2 **O2 Delivery:** Room air **HT:** 172.72 cm **WT:** 61.5 kg **BMI:** 20.85
General: Alert and follows commands
Neuro: Cranial Nerves 2-12 grossly intact
HEENT: Normal cephalic sclera anicteric. Pupils 3mm equal and reactive.
Neck: Trachea is midline, No crepitus. No posterior neck tenderness to palpation at the midline.
Cardiac: S1 and S2. No murmur, gallop, rub. +2 pulses in all 4 extremities.
Respiratory: Lung sounds clear
Abdomen: Soft, non distention, non tender, positive bowel sounds
Extremity: No obvious long bone deformity.

**Discharge Disposition**
Home

**Problem List/Past Medical History**
Ongoing
No qualifying data
Historical
No qualifying data

**Medications**
Home
acetaminophen 500 mg oral tablet, 500 mg= 1 Tab(s), Oral, Q6H
Motrin IB 200 mg oral tablet, 600 mg= 3 Tab(s), Oral, TID, PRN
Pepcid 20 mg oral tablet, 20 mg= 1 Tab (s), Oral, BID

**Labs**

**Labs Last 24 Hours**
HGB: 12.4 g/dL (12/16/19 05:56:00)
HCT: 36.5 % (12/16/19 05:56:00)
WBC: 4.5 x10^3/uL (12/16/19 05:56:00)
PLT: 139 x10^3/uL (12/16/19 05:56:00)
RBC: 4.06 x10^6/uL Low (12/16/19 05:56:00)
MCV: 89.9 fL (12/16/19 05:56:00)
MCH: 30.6 pg (12/16/19 05:56:00)
MCHC: 34 g/dL (12/16/19 05:56:00)
MPV: 8.9 fL (12/16/19 05:56:00)
RDW: 12.7 % (12/16/19 05:56:00)
Sodium: 137 mmol/L (12/16/19 05:56:00)
Potassium: 4.2 mmol/L (12/16/19 05:56:00)
Chloride: 104 mmol/L (12/16/19 05:56:00)
CO2: 25 mmol/L (12/16/19 05:56:00)
Anion Gap: 9 mmol/L (12/16/19 05:56:00)
Calcium: 9 mg/dL (12/16/19 05:56:00)
Glucose: 97 mg/dL (12/16/19 05:56:00)
BUN: 9 mg/dL (12/16/19 05:56:00)
Creatinine: 0.8 mg/dL (12/16/19 05:56:00)
eGFR: >60 (12/16/19 05:56:00)
eCrCl: 90 mL/min (12/16/19 05:56:00)
Magnesium: 1.7 mg/dL (12/16/19

Printed by: WUNNER RN, KATRINA D
Printed on: 12/16/2019 12:48 MST

Page 1 of 2

# Exhibit B-2-Flagstaff-Emergency Room Discharge Summary-P2.

FMC Discharge Summary

HAUSER, CAROLIN I - 11-115-91-94

05:56:00)
Phosphorus: 3 mg/dL (12/16/19 05:56:00)

**Discharge Condition**
Stable

**Discharge Plan**

Discharge Instructions

**Medication Instruction:** Please purchase a stool softner (colace) | OK to take Ibuprofen per bottle

**Activity:** Activity as tolerated

**Driving Restrictions:** No restrictions

**Bathing:** May bathe as usual

**Diet:** Progress to normal diet

**Call Physician and Return If:** Problems breathing | Chest pain | Shortness of breath | Temperature greater than 101 DegF

**Additional Instructions:** No strenuous activity, ie: aerobic workout or hiking, etc x 2 weeks. No air travel or scuba diving x 3 weeks.

Follow Up

| | | | |
|---|---|---|---|
| VERDE VALLEY DISCHARGE CLINIC | 340 South Willard Street, Cottonwood, AZ, 86326, (928) 634-5551 | 12/26/2019 11:05 am | A follow-up appointment has been made for you with Irene Forrest, FNP. |

Time spent less than 30 minutes

**Signature Line**
Electronically Signed On: 12/16/19 11:21

REED ACNP, JESSICA KATHERINE

PIERI MD, PAOLA

**Completed Action List:**
* Perform by REED ACNP, JESSICA KATHERINE on December 16, 2019 11:21 MST
* Sign by REED ACNP, JESSICA KATHERINE on December 16, 2019 11:21 MST
* VERIFY by REED ACNP, JESSICA KATHERINE on December 16, 2019 11:21 MST

Printed by: WUNNER RN, KATRINA D
Printed on: 12/16/2019 12:48 MST

Page 2 of 2