WO                                                                                                    JDN

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Carolin Isabelle Hauser, | No.  CV 20-08138-PCT-JAT (JFM) |
| Plaintiffs, | |
| v. | **ORDER** |
| Elijah M. Smith, et al., | |
| Defendants. | |

Plaintiff Carolin Isabelle Hauser brought this pro se civil rights action under 42 U.S.C. § 1983, various federal criminal statutes, and state law against State Attorney General Mark Brnovich, 19 Yavapai County officials,[1] and 3 employees from the State Bar of Arizona.[2]  (Doc. 37.)  Before the Court are the following motions:

· Defendant Mark Brnovich's Motion to Dismiss for failure to state a claim (Doc. 67);

· State Bar of Arizona Defendants' Motion to Dismiss for lack of jurisdiction and failure to state a claim (Doc. 82);

---

[1]  The Yavapai County Defendants are Elijah M. Smith, Taylor Mickle, Christopher Eller, William N. Lundy, Scott Mascher, Justin L. McQueary, Jeff Newnum, Brian Hunt, Richard Martin, Sheila Polk, Michael E. Cordrey, Christopher G. Michalsky, James R. Bigbee, Alexander J. Toth, Craig I. Brown, Rowle P. Simmons, Thomas Thurman, Randy Garrison, and Mary Mallory.  (Docs. 33, 83.)

[2]  The State Bar of Arizona Defendants are Jim Lee, Jackie Brokaw, and Karen Calcagno.  (Docs. 33, 82.)

· Yavapai County Defendants' Motion to Dismiss for failure to state a claim (Doc. 83);

· Yavapai County Defendants' Motion to Strike Plaintiff's Surresponse (Doc. 97); and

· State Bar of Arizona Defendants' Motion to Strike Plaintiff's Surresponse (Doc. 98).

The Court will grant the Motions to Strike, grant Brnovich's Motion to Dismiss, grant the State Bar of Arizona Defendants' Motion to Dismiss, and grant in part and deny in part the Yavapai County Defendants' Motion to Dismiss.

## I.    Background

In her 106-page First Amended Complaint, Hauser sets forth 26 causes of action against the named Defendants.  (Doc. 33.)  Hauser's claims stem from an incident on the morning of December 14, 2019, when she called 9-1-1 for assistance during a domestic dispute on her property in Rimrock, Arizona.  (*Id.* ¶ 1.)  Hauser alleges that Yavapai County Sheriff's deputies Smith and Eller responded and interrogated her.  (*Id.* ¶¶ 1–2.)  Deputy Mickel arrived and stood by during this interrogation.  (*Id.* ¶¶ 2–3.)

At one point, Smith asked Hauser to get into his patrol car, and when Hauser said that she did not want to, Smith told her she was under arrest.  (*Id.* ¶ 7.)  Hauser then ran toward her daughter and fiancé, who were on the scene, and Smith suddenly grabbed Hauser's arms behind her back and tackled her, which caused her to hit the gravel face first.  (*Id.* ¶ 8.)  Smith, Mickle, and Eller were all on top of Hauser, slamming her face down in the gravel, and the force resulted in life-threatening esophageal injuries and pneumomediastinum (abnormal presence of air or gas in the membrane between the lungs).  (*Id.* ¶¶ 8, 26, 28, 30–31.)  Smith took Hauser to the Camp Verde Jail, where she was held from approximately 8:50 a.m. until 2:00 p.m.  (*Id.* ¶¶ 11, 21.)

After her release, Hauser went to Verde Valley Medical Center in Cottonwood for emergency treatment, and she was eventually transported via ambulance to the Flagstaff Medical Center.  (*Id.* ¶¶ 22–25.)

Hauser asserts claims for false arrest and excessive force in violation of the Fourth Amendment (*Id.* ¶¶ 77–95), and claims under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for negligent training and supervision and "unconstitutional ratification of illegal conduct."  (*Id.* ¶¶ 96–104.)  Hauser alleges that Defendants committed criminal and seditious conspiracy and treason and acted as agents of foreign principals and as a "de factor corporate state." (*Id.* ¶¶ 105–159.)  She further alleges that Defendants violated commitments for United States' contributions to international financial institutions (*Id.* ¶¶ 160–163); acted as agents of international criminal police organizations (*Id.* ¶¶ 164–167); and violated federal criminal statutes and laws related to foreign relations (*Id.* ¶¶ 168–191, 211–215).  Finally, Hauser asserts state law claims of battery, negligence, and negligent training/supervision. (*Id.* ¶¶ 192–210.)  In her Prayer for Relief, Hauser seeks damages, declaratory and injunctive relief in the form of remedying unconstitutional statutes and policies, costs and fees, and any other relief deemed proper. (*Id.* at 48–49.)

Brnovich and the Yavapai County Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim (Docs. 67, 83), and the State Bar of Arizona Defendants move to dismiss under Rule 12(b)(1) and (6) for lack of jurisdiction and failure to state a claim. (Doc. 82.)

## II.    Motions to Strike

After the parties fully briefed the above Motions to Dismiss, Hauser filed surresponses to each of the three Motions. (Docs. 92–93, 95.)  The State Bar of Arizona Defendants and the Yavapai County Defendants each move to strike the surresponse filed in response to their Motions. (Docs. 97–98.)

Surresponses are not authorized by the Federal or Local Rules of Civil Procedure absent prior leave of the Court. *See Padilla v. Bechtel Const. Co.*, No. CV 06-286-PHX-LOA, 2007 WL 625927, at *1 (D. Ariz. Feb. 27, 2007).  Hauser's surresponses were improper because they were filed without leave of the Court.  Further, because Defendants did not submit any new evidence with their respective Replies, this is not an

1    instance were surresponses would be warranted.  The Motions to Strike will therefore be

2    granted.

3    **III.    Yavapai County Defendants' Motion to Dismiss**

4        **A.    Federal Rule of Civil Procedure 12(b)(6)**

5        Dismissal of a complaint, or any claim within it, for failure to state a claim under

6    Rule 12(b)(6) may be based on either a "'lack of a cognizable legal theory' or 'the

7    absence of sufficient facts alleged under a cognizable legal theory.'"   *Johnson v.*

8    *Riverside Healthcare Sys., LP,* 534 F.3d 1116, 1121–22 (9th Cir. 2008) (quoting

9    *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990)).  In determining

10   whether a complaint states a claim under this standard, the allegations in the complaint

11   are taken as true and the pleadings are construed in the light most favorable to the

12   nonmovant.  *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir.

13   2007).  A pleading must contain "a short and plain statement of the claim showing that

14   the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).  But "[s]pecific facts are not

15   necessary; the statement need only give the defendant fair notice of what . . . the claim is

16   and the grounds upon which it rests."   *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)

17   (internal quotation omitted).  To survive a motion to dismiss, a complaint must state a

18   claim that is "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell*

19   *Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility

20   when the plaintiff pleads factual content that allows the court to draw the reasonable

21   inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

22       A motion to dismiss is based on the pleadings, and if a court considers evidence

23   outside the pleadings, it must normally convert the Rule 12(b)(6) motion into a Rule 56

24   motion for summary judgment.  *See* Fed. R. Civ. P. 12(b); *United States v. Richie*, 342

25   F.3d 903, 907–08 (9th Cir. 2003).  "A court may, however, consider certain materials—

26   documents attached to the complaint, documents incorporated by reference in the

27   complaint, or matters of judicial notice—without converting the motion to dismiss into a

28   motion for summary judgment."  *Id.* at 908.

**B.     Discussion**

The Yavapai County Defendants argue that Hauser cannot assert a private right of action based on the federal statutes cited in Causes of Action Five through Twenty-two and Twenty-six.  (Doc. 83 at 13–14.)  They also argue that Hauser fails to state a claim for false arrest or excessive force against Smith, Mickle, or Eller in Causes of Action One and Two; that she fails to state a claim for failure to train/supervise or for ratification against the remaining Yavapai County Defendants; that all Yavapai County Defendants are entitled to qualified immunity; and that Hauser failed to serve a Notice of Claim as required under state law for her claims in Causes of Action Twenty-three through Twenty-five.  (*Id.* at 2–13, 14–15.)

**1.     Causes of Action Five through Twenty-two and Twenty-six**

The claims asserted in Causes of Action Five through Twenty-two and Twenty-six are brought under various federal criminal statutes.  (Doc. 33.)  Federal criminal statutes provide no basis for civil liability.  *See Sears v. Las Vegas Metro. Police Dep't*, No. 2:19-cv-01196-JAD-VCF, 2019 WL 3502890 (D. Nev. Aug. 1, 2019) (a plaintiff cannot bring criminal claims in a civil action).  Other federal statutes cited by Hauser are completely inapplicable and fail to establish a basis for or jurisdiction over her claims.  Accordingly, the Yavapai County Defendants' Motion will be granted as to the following Causes of Action:

·  Fifth Cause of Action under 18 U.S.C. § 241 (conspiracy).  *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (18 U.S.C. § 241 provides no basis for civil liability).

·  Sixth Cause of Action under 18 U.S.C. § 2381 (treason).  *See Ponvanit v. Superior Court of California*, No. CV 17-4054-FMO (JEM), 2018 WL 1135380, at *9 (C.D. Cal. Jan. 31, 2018) (18 U.S.C. § 2381 is criminal statute for which there is no private right of action), report and recommendation adopted, No. CV 17-4054-FMO (JEM), 2018 WL 1135502 (C.D. Cal.  Feb. 27, 2018).

· Seventh and Eighth Causes of action under 28 U.S.C. § 2384 (seditious conspiracy/advocating overthrow of government).  *See Suter v. Denton*, No. 3:18-cv-01988-N, 2019 WL 5887290, at *4 (N.D. Texas July 16, 2019) (noting that 28 U.S.C. § 2384 does not provide jurisdiction for civil action as criminal statutes cannot be enforced by civil action).

· Ninth Cause of Action under 18 U.S.C. § 219 (acting as agents of foreign principals).

· Tenth Cause of Action under 18 U.S.C. § 912 (impersonating United States officer).  *See Frison v. Zebro*, 339 F.3d 994, 998–1000 (8th Cir. 2003) (no private right of action for violation of proscription against impersonating federal officer under 18 U.S.C. § 912).

· Eleventh Cause of Action under 18 U.S.C. § 2 (punishable as principal for offense against the United States).

· Twelfth Cause of Action under 22 U.S.C. § 611 (Foreign Agents Registration Act).  *See Comm. for a Free Namibia v. South West Africa People's Org.*, 544 F. Supp. 722, 725–726 (D.D.C. 1982) (enforcement of the Foreign Agents Registration Act is left to the federal government and does not provide a private cause of action).

· Thirteenth Cause of Action under 18 U.S.C. § 951 (agents of foreign governments).

· Fourteenth Cause of Action under 22 U.S.C. §§ 611, 612 (foreign agent registration).

· Fifteenth Cause of Action under 18 U.S.C. §§ 219 (acting as agents of foreign principals), 951 (acting as agents of foreign governments) and 22 U.S.C. § 612.

· Sixteenth Cause of Action under 22 U.S.C. § 262c (commitments for contributions to international financial institutional fostering economic development in less developed countries).  Section 262c sets out congressional findings in support of continued United States participation in international financial institutions that assist in

fostering economic development in less developed countries and it does not provide a basis for a civil suit.

· Seventeenth Cause of Action under 22 U.S.C. § 263 (International Prison Commission).  Section 263 states that the United States shall continue as a member of the International Prison Commission and it does not provide a basis for a civil suit.

· Eighteenth Cause of Action under 22 U.S.C. § 284 (membership acceptance in International Development Association).  Section 284 authorizes the President to accept membership for the United States in the International Development Association and it does not provide a basis for a civil suit.

· Nineteenth and Twentieth Causes of Action under 22 U.S.C. §§ 286, 286g (the Bretton Woods Agreements Act).  Section 286 authorizes the President to accept membership for the United States in the International Monetary Fund and does not provide a basis for a civil suit.  Section 286g is a jurisdiction and venue statute, but because the United States did not bring this action, the statute is not applicable, and it fails to provide for jurisdiction over Hauser's claims.  *See Pacheco v. Owens*, Civil No. 03-841 WJ/ACT, 2003 WL 27384881, at *2 (D. N.M. Oct. 1, 2003).

· Twenty-first Cause of Action under 18 U.S.C. § 7 (special maritime and territorial jurisdiction defined).  Section 7 provides for federal jurisdiction over criminal acts occurring within the defined territory and it does provide a basis for a civil suit.

· Twenty-second Cause of Action under 8 U.S.C. § 1481 (loss of nationality).  Section 1481 sets out when a citizen shall lose his or her nationality and it does not provide a basis for a civil suit.

· Twenty-sixth Cause of Action under 18 U.S.C. § 2340 (torture).  *See Felder v. Howerton*, 240 F. App'x 404, 406 (11th Cir. Sept. 13, 2007) (section 2340 assigns criminal liability to persons who commit or conspire to commit torture outside of the United States).

Causes of Action Five through Twenty-two and Twenty-six will be dismissed, and because these claims cannot be cured by amendment, they will be dismissed with prejudice.

### 2.   Causes of Action One and Two—False Arrest and Excessive Force

Hauser asserts Fourth Amendment claims of false arrest and excessive force against Smith, Mickle, and Eller based on their alleged actions on December 14, 2019. (Doc. 33.)  Yavapai County Defendants argue that Hauser's allegations regarding her arrest are incomplete and not "plausibly pled."  (Doc. 83 at 8.)  They further argue that Smith, Mickle, and Eller are entitled to qualified immunity as to these two claims.  (*Id.* at 5–10.)

#### a.   Excessive Force

The Fourth Amendment provides that the "right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated . . . ."  *Heien v. N. Carolina*, 574 U.S. 54, 60 (2014); U.S. Const. amend. IV.  The relevant inquiry for determining a Fourth Amendment violation is whether the defendant's actions were objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation. *Graham v. Connor*, 490 U.S. 386, 397 (1989).  In *Graham*, the Supreme Court set out the test for "objective reasonableness," which balances the nature and quality of the intrusion on the plaintiff's interests against the countervailing governmental interests at stake.  *Id.* at 396–97.  Factors to consider include the severity of the crime at issue, whether the plaintiff posed an immediate threat to the safety of defendants or others, and whether the plaintiff was actively resisting arrest or attempting to evade arrest by flight.  *Id.* at 396.

Hauser's facts show that she called the police to her property for assistance with a domestic dispute, and when Smith, Mickle, and Eller arrived, they conducted a pat down for weapons and determined that Hauser was unarmed.  (Doc. 33 ¶¶ 1, 4, 6, 34.)  At the time, Hauser—who was 41-years old—was wearing her pajamas and a coat.  (*Id.* ¶¶ 5,

- 8 -

34.)  Defendant officers spoke to Hauser and her fiancé, and then Smith suggested that Hauser wait in his patrol car because she was cold.  (*Id.* ¶¶ 2, 6, 7.)  Hauser stated she did not want to get in his patrol car, and Smith told her, "well, then, you are under arrest." (*Id.* ¶ 7.)  Hauser responded by attempting to run to her daughter and fiancé, but Smith grabbed her arms, tackled her to the dirt, and she hit the gravel face first, and then Smith, Mickle, and Eller were all on top of Hauser, which she estimated to be approximately 600 pounds of total weight.  (*Id.* ¶ 8.)  Hauser's resulting injuries to her neck, esophagus, and lungs required emergency care, hospital admittance, and transport to a higher level of care in Flagstaff.  (*Id.* ¶¶ 6–22, 28, 31, 36.)

Affording Hauser the benefit of any doubt, her allegations regarding Smith's take down after he grabbed her arms, the three officers' pile up onto her body once she was on the ground, and the significance of her injuries as a result, support a plausible inference that the three Defendants' actions were objectively unreasonable.  *See Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007) ("even when some force is justified the amount actually used may be excessive") (citations and internal quotation marks omitted).  Hauser therefore states a plausible Fourth Amendment claim for excessive force.

### b.      False Arrest

Under the Fourth Amendment, to state a claim for false arrest, a plaintiff must allege facts to support that there was no probable cause for the arrest.  *See Cabrera v. City of Huntingdon Park*, 159 F.3d 374, 380 (9th Cir. 1998) (citation omitted).  Probable cause exists when an officer has reasonably trustworthy information of facts and circumstances that are sufficient to justify the belief that an offense has been or is being committed.  *Stoot v. City of Everett*, 582 F.3d 910, 918 (9th Cir. 2009) (citing *Brinegar v. United States*, 338 U.S. 160, 175–76 (1949) (internal quotation marks omitted)).

Hauser's facts show that she called the police for assistance in a domestic dispute, the officers spoke to her and her fiancé, and Smith told Hauser she was under arrest only after Hauser declined his offer to wait in his patrol car to avoid the cold.  Although

1    Hauser's facts are thin, when construed liberally, those facts support that there was no
2    probable cause for her arrest; thus, Hauser sufficiently states a plausible Fourth
3    Amendment claim for false arrest.

4    ### c.    Qualified Immunity

5    Defendants assert that they are entitled to qualified immunity.  (Doc. 83 at 5–12.)
6    Government officials enjoy qualified immunity from civil damages unless their conduct
7    violates "clearly established statutory or constitutional rights of which a reasonable
8    person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   In
9    deciding if qualified immunity applies, the Court must determine: (1) whether the facts
10   alleged show the defendant's conduct violated a constitutional right; and (2) whether that
11   right was clearly established at the time of the violation.  *Pearson v. Callahan*, 555 U.S.
12   223, 230–32, 235–36 (2009) (courts may address either prong first depending on the
13   circumstances in the particular case).  In the qualified immunity analysis, the court must
14   consider all disputed facts in the light most favorable to the nonmovant.  *Isayeva v.*
15   *Sacramento Sheriff's Dep't*, 872 F.3d 938, 946 (9th Cir. 2017).

16   For a right to be clearly established there does not have to be a case directly on
17   point; however, "existing precedent must have placed the statutory or constitutional
18   question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix*
19   *v. Luna*, 577 U.S. 7, 12 (2017)).  Clearly established law "must be particularized to the
20   facts of the case," and "should not be defined at a high level of generality."  *White*, 137 S.
21   Ct. at 552 (quotation and citation omitted).  A right is clearly established when case law
22   has been "earlier developed in such a concrete and factually defined context to make it
23   obvious to all reasonable government actors, in the defendant's place, that what he is
24   doing violates federal law." *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1117 (9th
25   Cir. 2017) (citing *White*, 137 S. Ct. at 551).

26   Once the right at issue is defined, the court must then "identify a case where an
27   officer acting under similar circumstances as [the defendant] was held to have violated"
28   that right.  *Id.*  If there is no such case, then the right was not clearly established.  *See id.*

at 1117–18.  "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent."  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal citations omitted).  "The Supreme Court has made clear that 'officials can still be on notice that their conduct violates established law even in novel factual circumstances.'"  *Mattos v. Agarano*, 661 F.3d 433, 442 (9th Cir. 2011) (quoting *Hope*, 536 U.S. at 741).  This principle is particularly relevant "in the context of Fourth Amendment cases, where the constitutional standard—reasonableness—is always a very fact-specific inquiry."  *Id.*; *see Drummond v. City of Anaheim*, 343 F.3d 1052, 62 (9th Cir. 2003) (holding that "no federal case directly on point [was needed] to establish" that the conduct at issue violated clearly established law and constituted excessive force).

As stated above, Hauser alleges a cognizable excessive force claim against Smith, Mickle, and Eller.  In support of their qualified immunity argument, the Yavapai County Defendants rely on *Bennett v. Gow*, which held that qualified immunity was properly granted where an officer pushed an arrestee to the ground and used minor force to handcuff him.  (Doc. 83 at 9, citing 345 F. App'x 286, 287 (9th Cir. 2009).)  But *Bennett* is not analogous to the instant action, where Hauser alleges that the three Defendants used significant force when Smith tackled her and they all got on top of her after she was on the ground.

The Yavapai County Defendants also rely on *Jackson v. Bremerton*, which held that where the plaintiff actively interfered with the arrest of her son and participated in a "melee," the defendant officers' use of force in effecting her arrest was not excessive. 268 F.3d 646, 651, 653 (9th Cir. 2001).  Thus, in *Jackson*, qualified immunity was granted on the first prong of the analysis—whether there was a constitutional violation. Here, the Court has already determined that Hauser's facts support a Fourth Amendment violation.

Underlying the Supreme Court's holding in *Graham* is the principle that force is only justified when there is a need for force.  *See Graham*, 490 U.S. at 396; *Blankenhorn*,

485 F.3d at 481; *Alexander v. City and Cnty. of S.F.*, 29 F.3d 1355, 1367 (9th Cir. 1994). As mentioned above, the Ninth Circuit has stated that where some force is justified, "the amount actually used may be excessive." *Blankenhorn,* 485 F.3d at 477.  In 2007, the Ninth Circuit held that a reasonable jury could find that defendant officers' gang tackle of a suspect during an arrest for a minor crime was unreasonable and that the right at issue was clearly established.  *Id.* at 480–481.   The principles set out in *Graham* and *Blankenhorn* would have put Smith, Mickle, and Eller on notice that tackling and piling onto an unarmed woman for a minor crime—or no crime—was a violation of her Fourth Amendment rights.   The Court will deny Defendants' request for dismissal of the excessive force claim based on qualified immunity.

As to the false arrest claim, the Yavapai County Defendants base their qualified immunity argument solely on the first prong.  (Doc. 83 at 8.)  They contend that for qualified immunity purposes, officers need only show that it is reasonably arguable that there was probable cause for arrest, and Hauser's allegations cannot get over this threshold.  (*Id.*)  The Court has already determined that, construed liberally, Hauser's facts support a false arrest claim.   Indeed, there are no facts in the First Amended Complaint that the officers had any cause to arrest Hauser.   Therefore, at this stage, the request for qualified immunity as to this claim will be denied.

### 3.     Causes of Action Three and Four—*Monell* Claims

In her Third Cause of Action, Hauser sets forth a claim under *Monell* for failure to train/supervise against 20 of the named Defendants—all Defendants except Smith, Mickle, and Eller.  (Doc. 33 ¶¶ 96–98.)  In her Fourth Cause of Action, Hauser asserts a *Monell* claim for ratification of unconstitutional conduct against the same 20 Defendants. (*Id.* ¶¶ 100, 103.)   Hauser asserts that these Defendants are sued in their "personal capacities." (*Id.* ¶¶ 98, 103.)

The Yavapai County Defendants argue that Hauser fails to state that any the named Yavapai County Defendants participated in the events giving rise to these claims or that any of them were aware of a deficiency in training, and she fails to allege how a

failure to train or supervise caused her injuries or what prior pattern of individual or institutional conduct existed.  (Doc. 83 at 11.)  The Yavapai County Defendants further argue that Hauser fails to allege that any individual Yavapai County Defendant engaged in the ratification, knew of unconstitutional behavior, or had any knowledge regarding the incident that occurred on December 14, 2019.  (*Id.* at 12.)

### a.   *Monell* Liability

Under *Monell*, a plaintiff may bring suit against a municipality when she has suffered a civil rights violation caused by a custom, practice, or policy created by the municipality.  *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell*, 436 U.S. at 690–691.  *Monell* liability cannot attach to an individual (in his or her personal capacity) or a State entity.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989) (States are protected by the Eleventh Amendment while municipalities are not, and *Monell* is limited to "local government units," which are not considered part of the State for Eleventh Amendment purposes).  Thus, a *Monell* claim is a suit against a local government unit or entity.  A suit against a defendant in his or her official capacity represents another way of pleading an action against an entity of which the defendant is an agent.  *Monell*, 436 U.S. at 690 n.55.  It follows that Hauser's claims under *Monell* must be brought against defendant officers in their official capacity, not their personal capacity.

The distinction between individual and official capacity claims can be difficult to understand, even for lawyers.  *See VanHorn v. Oelschlager*, 502 F.3d 775, 779 (8th Cir. 2007) (state officials misconstrued the differences between official and individual capacity claims and the immunities available).  The Ninth Circuit has cautioned that a pro se litigant's failure to understand the legal significance between official and individual capacity claims cannot be taken advantage of for the purpose of dismissing claims. *Mitchell v. Washington*, 818 F.3d 436, 442 & n.3 (9th Cir. 2016) (the record demonstrated that the plaintiff did not understand the legal significance between official versus personal capacity claims; thus, he was not bound by his deposition testimony

- 13 -

1 stating that he sued the defendants only in their official capacities, and his damages

2 claims against the defendants in their individual capacities were not barred even though

3 the plaintiff did not contest the district court's finding that those claims were barred).

4 Accordingly, the Court will construe Hauser's *Monell* claims in Causes of Action Three

5 and Four as alleged against the named Defendants in their official capacities.

### b.      Failure to Train/Supervise

7        A local government may be held liable under § 1983 for a constitutional violation

8 if that violation occurred as a result of the municipality's official policy or custom.

9 *Monell*, 436 U.S. at 694.   "Official municipal policy includes the decisions of a

10 government's lawmakers, the acts of its policymaking officials, and practices so

11 persistent and widespread as to practically have the force of law." *Connick v. Thompson*,

12 563 U.S. 51, 61 (2011).  A municipality may also be liable if it has a policy of inaction

13 and such inaction amounts to a failure to protect constitutional rights.  *City of Canton v.*

14 *Harris*, 489 U.S. 378, 388 (1989).

15        "[A] local government's decision not to train certain employees about their legal

16 duty to avoid violating citizens' rights may rise to the level of an official government

17 policy for purposes of § 1983." *Connick*, 563 U.S. at 60.  To support a *Monell* claim for

18 failure to train under § 1983, a plaintiff must allege facts demonstrating that the local

19 government's failure to train amounts to "deliberate indifference to the rights of persons

20 with whom the [untrained employees] come into contact."  *Connick*, 563 U.S. at 61

21 (citing *Canton*, 489 U.S. at 388).  This deliberate indifference standard is an objective

22 standard, and it is satisfied only when "a § 1983 plaintiff can establish that the facts

23 available to . . . policymakers put them on actual or constructive notice that the particular

24 omission [or act] is substantially certain to result in the violation of the constitutional

25 rights of their citizens." *Castro v. Cnty. of Los Angeles*, 797 F.3d 654, 676 (9th Cir.

26 2015).  Thus, to maintain a failure to train claim, a plaintiff must allege facts showing a

27 "pattern of violations" that amounts to deliberate indifference and that the governmental

28 entity had actual or constructive notice of those violations.  *Connick*, 563 U.S. at 72.

1   Similarly, to properly allege a claim for failure to supervise, a plaintiff must allege facts

2   demonstrating that the supervision was "sufficiently inadequate" to amount to "deliberate

3   indifference." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

4       To sufficiently plead a *Monell* claim and withstand a Rule 12(b)(6) motion to

5   dismiss, allegations in a complaint "may not simply recite the elements of a cause of

6   action, but must contain sufficient allegations of underlying facts to give fair notice and

7   to enable the opposing party to defend itself effectively." *AE ex rel. Hernandez v. Cnty.*

8   *of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216

9   (9th Cir. 2011)).

10       Here, the Court has found that Hauser sufficiently states Fourth Amendment

11   claims against Smith, Mickle, and Eller for false arrest and excessive force.  But Hauser

12   fails to allege facts to show that Yavapai County has a training policy that amounted to

13   deliberate indifference to individuals' constitutional rights.  Instead, she states in

14   conclusory fashion that the named Defendants "failed to institute, require, and enforce

15   proper and adequate training and supervision on interacting and dealing with Citizens"

16   and that "the need for such training and supervision was obvious especially in the area of

17   excessive force." (Doc. 33 ¶ 98.)

18       As Defendants note, Hauser lumps all the Defendants together such that it is not

19   clear which Defendants are policymakers for the purpose of a *Monell* claim.  (*See id.*;

20   Doc. 83 at 11.)  Hauser also alleges that Defendants' failure to train and supervise

21   resulted in a violation of her Fourth Amendment rights; that Defendants failed to train

22   employees on how to arrest an unarmed citizen, how to recognize a call for assistance as

23   a common tool used by citizens to cope with interpersonal relationships, and how to

24   avoid using excessive force.  (Doc. 33 ¶ 98.)  These allegations appear to simply recite

25   the elements of a *Monell* claim.  More importantly, Hauser's allegations do not provide

26   any specifics about knowledge any policymaker had regarding any deficiencies in

27   Yavapai County's deputy training program or about how any policymaker consciously or

28   deliberately disregarded a potential risk by allowing a deficiency in its training to

1   continue.  Nor does Hauser allege any other specific instances of similar constitutional

2   violations to show a pattern of such violations resulting from the alleged deficient

3   training.  A single incident is insufficient to prove a policy or custom of inadequate

4   training, notice, or deliberate indifference on the part of any named Defendant.  *See*

5   *Connick*, 563 U.S. at 72.

6       For these reasons, Hauser fails to state a *Monell* claim in Cause of Action Three,

7   and the Yavapai County Defendants' Motion to Dismiss will be granted as to this claim.

8                   **c.**     **Ratification**

9       A plaintiff may claim *Monell* liability where an "official with final policy-making

10  authority ratified a subordinate's unconstitutional decision or action and the basis for it."

11  *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992).   "A policymaker's

12  knowledge of an unconstitutional act does not, by itself, constitute ratification."  *Christie*

13  *v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999).  Nor does a policymaker's mere refusal to

14  overrule a subordinate's completed act constitute approval.  *Id.*   Rather, ratification

15  requires the authorized policymaker to make a "conscious, affirmative choice."  *Gillette*,

16  979 F.2d at 1347.  The elements of ratification include the act of approval, and that the

17  ratification was (1) the cause in fact, and (2) the proximate cause of the constitutional

18  deprivation.  *Arnold v. Int'l Bus. Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981).

19  Therefore, to show ratification, a plaintiff must show that a final policymaker made a

20  deliberate choice to endorse the subordinate's actions and that that ratification caused the

21  constitutional violation.  *Id.*; *see Sheehan v. City and Cnty. of S.F.*, 743 F.3d 1211, 1231

22  (9th Cir. 2014).

23      As with her failure-to-train/supervise claim, Hauser lumps together all Yavapai

24  County Defendants in her ratification claim; thus, she fails to identify a policymaker who

25  ratified a subordinate's unconstitutional action.  (Doc. 33 ¶ 103.)  Hauser also fails to

26  allege a "conscious, affirmative choice" and knowledge of the excessive force and false

27  arrest committed by Smith, Mickle, and Eller, and she fails to allege how the ratification

28  of the officers' conduct caused a constitutional violation.  *See Gillette*, 979 F.2d at 1347.

Hauser's general and conclusory allegations that all Defendants ratified the unconstitutional actions of Smith, Mickle, and Eller and that they approved the actions and cleared these officers of any improper conduct are insufficient.  In short, Hauser's allegations do not plausibly state a claim for *Monell* liability under a ratification theory. *See Christie*, 176 F.3d at 1238.  The Yavapai County Defendants' Motion to Dismiss will be granted as to the ratification claim in Cause of Action Four.

### 4.        Causes of Action Twenty-three through Twenty-five

In Cause of Action Twenty-three, Hauser alleges a state law claim of battery against Smith, Mickle, and Eller.  (Doc. 33 ¶¶ 192–198.)  In Cause of Action Twenty-four, she alleges a state law claim of negligence against all Defendants.  (*Id.* ¶¶ 199–204.)  And in Cause of Action Twenty-five, Hauser alleges a state law claim of failure to train/supervise against all the Yavapai County Defendants except Smith, Mickle, and Eller.  (*Id.* ¶¶ 205–210.)  The Yavapai County Defendants argue that all three state law claims must be dismissed because Hauser failed to provide a Notice of Claim as required under Arizona Revised Statutes § 12-821.01.  (Doc. 83 at 14–15.)

Under Arizona state law, a plaintiff must file a Notice of Claim with the public employee within 180 days of the incident from which the claim arose.  Ariz. Rev. Stat. § 12–821.01(A).  A plaintiff may file the notice by delivering a copy of the claim to an individual personally or to an agent authorized to receive service of process, or by leaving copies at that individual's "usual place of abode." Ariz. R. Civ. P. 4.1(d).  In addition, the plaintiff must give notice to the employer; "[a] claimant who asserts that a public employee's conduct giving rise to a claim for damages was committed within the course and scope of employment must give notice of the claim to both the employee individually and to his employer."  *Crum v. Superior Court In and For Cnty. of Maricopa*, 922 P.2d 316, 317 (Ariz. Ct. App. 1996).  Arizona courts have held that plaintiffs who do not strictly comply with section 12-821.01(A) are barred from bringing suit.  *Harris v. Cochise Health Sys.*, 160 P.3d 223, 230 (Ariz. Ct. App. 2007) ("[c]ompliance with the notice provision of § 12-821.01(A) is a mandatory and essential

prerequisite to such an action").  "Actual notice and substantial compliance do not excuse failure to comply with the statutory requirements of . . . § 12-821.01(A)."  *Falcon ex rel. Sandoval v. Maricopa Cnty.*, 144 P.3d 1254, 1256 (Ariz. Ct. App. 2006).

An assertion that the plaintiff has not complied with the notice-of-claim statute is an affirmative defense.  *Lee v. State*, 242 P.3d 175, 178 (Ariz. Ct. App. 2010).  Therefore, the defendant bears the burden of proving that the plaintiff failed to comply.  *See Pfeil v. Smith*, 900 P.2d 12, 14 (Ariz. Ct. App. 1995) ("[i]n a civil action . . . the defendant has the burden of proving an affirmative defense").

The Yavapai County Defendants' Motion to Dismiss states that "none of them received a pre-litigation notice of claim."  (Doc. 83 at 14.)  But there is no sworn statement from any of the Yavapai County Defendants averring that no Notice of Claim was served.  *Cf. Bryant v. City of Goodyear*, CV-12-00319-PHX-JAT, 2013 WL 1897129, at *4 (D. Ariz. May 6, 2013) (dismissing state law claims after the defendants provided affidavits averring that they were not served with a copy of the Notice of Claim); *Barth v. Cochise Cnty.*, 138 P.3d 1186, 1190 (Ariz. Ct. App. 2006) (finding that the plaintiff did not serve valid Notice of Claim on the board of supervisors, "as the county showed by the affidavit of the clerk of the board of supervisors stating that [the plaintiff] has not served her with a notice of claim").  There is no evidence submitted with the Yavapai County Defendants' Motion.  (*See* Doc. 83.)  The arguments and statements made by defense counsel are not evidence.  *Barcamerican Intern. USA Trust v. Tyfield Importers*, *Inc.*, 289 F.3d 589, 593 n.4 (9th Cir. 2002).  Consequently, the Yavapai County Defendants fail to meet their burden to show that Hauser failed to comply with the notice-of-claim statute.  Their Motion to Dismiss will be denied as to Causes of Action Twenty-three through Twenty-five.

## V.    Brnovich's Motion to Dismiss

The Rule 12(b)(6) standard applicable to Brnovich's Motion is set forth above.

Brnovich is named as a Defendant in the Third (*Monell* claim), Fourth (*Monell* claim), Twenty-fourth (state law negligence), and Twenty-fifth (state law failure to

1  train/supervise) Causes of Action.  (Doc. 33.)

2      Brnovich argues that Hauser fails to allege any facts or a causal connection

3  between her arrest and detention and any acts of Brnovich, and she fails to allege any

4  specific injury as a result of Brnovich's conduct.  (Doc. 67 at 4–5.)  Brnovich also argues

5  that he is entitled to qualified immunity, that the Eleventh Amendment bars any damages

6  claim against him in his official capacity, and that any state-law claim is barred because

7  Hauser did not comply with the Arizona notice-of-claim statute.  (*Id.* at 5–8.)

8      In her opposition to Brnovich's Motion, Hauser does not respond to Brnovich's

9  legal arguments for dismissal.  (Doc. 80.)  Instead, Hauser discusses various "major

10  premises," including that the State of Arizona has been replaced by federal corporations

11  that act as agencies or instrumentalities of the United States government, and she alleges

12  that Brnovich is therefore an attorney for the "Corporate State" and does not act in the

13  name of Arizona according to the Arizona Constitution.  (*See id.* at 1–3, 11–12.)  Hauser

14  accuses Brnovich of being an agent of foreign principals and acting for foreign countries

15  and, for this reason, she argues that he is not protected by sovereign immunity.  (*Id.* at

16  12–15, 17.)

17      To state a plausible claim against a government official in his individual capacity,

18  a plaintiff must plead that the defendant, "through [his] own individual actions, has

19  violated the Constitution."  *Iqbal*, 556 U.S. at 676.  A supervisor may be held liable under

20  § 1983 only if there is "a sufficient causal connection between the supervisor's wrongful

21  conduct and the constitutional violation."  *Crowley v. Bannister*, 734 F.3d 967, 977 (9th

22  Cir. 2013) (citations and internal quotation marks omitted); *Fayle v. Stapley*, 607 F.2d

23  858, 862 (9th Cir. 1979) (when a named defendant holds a supervisorial position, the

24  causal link between the defendant and the claimed constitutional violation must be

25  specifically alleged).

26      Here, Hauser's own facts show that Brnovich was not present during her arrest and

27  detention, and Hauser fails to allege any specific conduct by Brnovich or how his conduct

28  is linked to the alleged constitutional violations.  Hauser sets forth only broad and

1   conclusory allegations that Brnovich failed to provide meaningful training, he

2   participated in the ratification the Yavapai County deputies' actions, and he is liable

3   under *Monell* for failure to train/supervise employees on how to arrest an unarmed citizen

4   and this failure was pursuant to a policy or practice. (Doc. 33 ¶¶ 20, 39–40, 48, 50, 56,

5   66, 75, 98-99).

6         As discussed above, liability under *Monell* arises where an alleged constitutional

7   deprivation is caused by a policy or custom of the municipality.  *Monell*, 436 U.S. at

8   691–94; *Fogel v. Collins*, 531 F.3d 824, 834 (9th Cir. 2008).  Whether an official is a

9   final policymaker for purposes of municipal liability is a question of state law.  *Ortega*

10  *Melendres v. Arpaio*, 598 F. Supp. 2d 1025 (D. Ariz. 2009) (citing *Streit v. Cnty. of L.A.*,

11  236 F.3d 552, 560 (9th Cir. 2001)).  Arizona state law charges county sheriffs with the

12  responsibility of conducting law enforcement and jail activity on the part of the county.

13  Under state statute, the county sheriff must "preserve the peace," arrest those who

14  commit or attempt to commit crimes, prevent and suppress breaches of the peace, and

15  take charge of and keep the county jail.  Ariz. Rev. Stat. § 11-441(A)(1)-(3), (5).  The

16  purpose of the sheriff's duty to arrest individuals "is the prompt and orderly

17  administration of criminal justice, including the Sheriff's discretionary investigatory

18  determination of when enough evidence has been obtained to make an arrest." *Guillory*

19  *v. Greenlee Cnty.*, No. CV 05-352 TUC DCB, 2006 WL 2816600, at *4 (D. Ariz. Sept.

20  28, 2006).  "This makes the Sheriff the final policymaker regarding criminal

21  investigations" and "officer training." *Id.* ("the alleged inadequate training was a policy

22  of the County because the Sheriff was the policymaker for the County regarding the

23  officer training").  Further, "the County is liable for policies made by the Sheriff,

24  pursuant to his designated powers and duties as provided for by statute[.]" *Id.*

25        Accordingly, under state law, Brnovich, as the State Attorney General, is not the

26  policymaker who would be liable under *Monell* for the Yavapai County Sheriff's Office

27  policies related to arrests and use-of-force policies.  Because Brnovich is not the proper

28

1   Defendant for Hauser's *Monell* claims, Brnovich's Motion to Dismiss will be granted as

2   to the Third and Fourth Causes of Action.

3       The Twenty-fourth Cause of Action alleges negligence.  (Doc. 33.)  To establish a

4   claim for negligence under Arizona law, a plaintiff must prove: 1) a duty requiring the

5   defendant to conform to a certain standard of care; 2) a breach by the defendant of that

6   standard; 3) a causal connection between the defendant's breach and the resulting injury;

7   and 4) actual damages.  *Gipson v. Kasey*, 150 P.3d 228, 230 (2007) (citation omitted).  As

8   discussed, Hauser's own facts show that Brnovich was not on the scene of Hauser's

9   arrest, nor was he involved in Hauser's interrogation or detention at the jail.  Absent any

10  personal involvement, Brnovich cannot be liable for negligence.  Brnovich's Motion to

11  Dismiss will therefore be granted as to the Twenty-fourth Cause of Action.

12      The Twenty-fifth Cause of Action asserts a state law claim of failure to

13  train/supervise.  (Doc. 33.)  To be liable for negligent hiring, retention, or supervision of

14  an employee, the court must find that the employee/agent committed a tort.  *Mulhern v.*

15  *City of Scottsdale*, 799 P.2d 15, 18 (Ariz. Ct. App. 1990).  Thus, the liability of the

16  employer "depend[s] on the necessary finding of liability on the part of [his] agent."

17  *Mulligan v. Grace*, 666 P.2d 1092, 1094 (Ariz. Ct. App. 1983).  The Yavapai County

18  deputies are county employees, and, as discussed above, the County Sheriff is responsible

19  for Yavapai County deputy training and supervision.  *See Guillory*, 2006 WL 2816600, at

20  *4.  In other words, the Yavapai County deputies were not acting as employees or agents

21  of the state Attorney General.  Even assuming that some of the Yavapai County

22  Defendants are liable for committing a tort, Brnovich is not their employer for purposes

23  of liability for a negligent training or supervision claim.  *See* Ariz. Rev. Stat. § 41-192

24  (listing the powers and duties of attorney general).  Accordingly, Brnovich's Motion will

25  be granted as to the state law claim against Brnovich for negligent training/supervision.

26      For the above reasons, Brnovich's Motion to Dismiss will be granted, and the

27  Court need not address Brnovich's remaining arguments.  The claims against Brnovich

28

1  are not curable by amendment; therefore, the claims against him will be dismissed with

2  prejudice.

3  **VI.     State Bar of Arizona Defendants' Motion to Dismiss**

4  **A.     Federal Rule of Civil Procedure 12(b)(1)**

5  Rule 12(b)(1) allows a defendant to raise the defense that the court lacks

6  jurisdiction over the subject matter of an entire action or of specific claims alleged in the

7  action.  When considering a motion to dismiss for lack of subject matter jurisdiction, the

8  Court takes as true the material facts alleged in the complaint.  *See Whisnant v. United*

9  *States*, 400 F.3d 1177, 1179 (9th Cir. 2005).  But the Court is not restricted to the face of

10  the pleadings; it may consider affidavits to resolve any factual disputes concerning the

11  existence of jurisdiction.  *McCarthy v .United States*, 850 F.2d 558, 560 (9th Cir. 1988)

12  (citation omitted); *see Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir.

13  1983) (consideration of material outside the pleadings did not convert a Rule 12(b)(1)

14  motion into one for summary judgment).

15  The party invoking federal subject-matter jurisdiction bears the burden of

16  establishing standing under Article III of the United States Constitution.  *Lewis v. Cont'l*

17  *Bank Corp.,* 494 U.S. 472, 477 (1990).  "[S]tanding is an essential and unchanging part

18  of the case-or-controversy requirement of Article III."  *Lujan v. Defenders of Wildlife*,

19  504 U.S. 555, 560 (1992).  "Standing requires the party asserting the existence of federal

20  court jurisdiction to establish three elements: (1) an injury in fact that is (a) concrete and

21  particularized and (b) actual or imminent; (2) causation; and (3) a likelihood that a

22  favorable decision will redress the injury."  *Wolfson v. Brammer*, 616 F.3d 1045, 1056

23  (9th Cir. 2010).

24  **B.     Discussion**

25  State Bar of Arizona Defendants Lee, Brokaw, and Calcagno assert that no facts

26  exist to support Hauser's claims against them.  (Doc. 82 at 5–6.)  In support of their

27  Motion, State Bar of Arizona Defendants rely on the docket in this case and they submit

28  the affidavit of Lisa M. Panahi, General Counsel to the State Bar of Arizona.  (*Id.*, Ex. 1,

Panahi Aff. ¶ 1.)   The docket shows that in June 2020, Hauser filed her original complaint against Smith, Mickle, and Eller and Doe Defendants 1–100. (Doc. 1.)  On the face of her Complaint, Hauser identified Steven Lee McMillan of Sedona, Arizona as "Counsel of Choice for Plaintiff."   (*Id.* at 1.)   McMillan signed the Complaint as a "Witness," and he signed as a "Witness" a subsequently filed Motion for Issuance of Subpoena.  (*Id.* at 34; Doc. 10.)  In an order dated September 2, 2020, the Court noted that no state bar attorney number was listed for McMillan, and the Court noted that McMillian did not appear to be admitted to the bar for the District of Arizona.  (Doc. 12.)  The Court ordered Hauser and McMillan to each show cause why McMillan should not be sanctioned for appearing without being admitted to the bar of this Court and reported to the Arizona Supreme Court for investigation on practicing law in the State without authorization.  (*Id.* at 2.)  In response, McMillan admitted that he has not been admitted to the bar and is not licensed to practice law in Arizona.  (Doc. 14.)

Thereafter, Defendant Lee, Senior Bar Counsel for the State Bar of Arizona, wrote a letter to McMillan stating that he appeared to have engaged in the unauthorized practice of law and requested that McMillan respond by letter or email to Lee or Defendant Brokaw, who is Lee's secretary.  (Doc. 82, Ex. A, Panahi Aff. ¶¶ 6–7, 9–10.)  Another Arizona State Bar employee, Defendant Calcagno, emailed McMillan to send him copies of documents from this action that were referenced in Lee's letter.  (*Id.* ¶¶ 8, 11.)  There was no response from McMillan.  (*Id.* ¶ 14.)  There is no record of any communication between the State Bar of Arizona and Hauser.  (*Id.* ¶ 16.)

On November 3, 2020, Hauser filed her First Amended Complaint, which is the operative complaint.  (Doc. 33.)  She named Lee, Brokaw, and Calcagno as Defendants; however, there are no allegations specific to these three State Bar of Arizona Defendants.  (*Id.*)   Instead, Hauser alleges that these Defendants, along with the other named Defendants, are "independent contractors with policy making authority" and that they have supervisory positions and participated in the supervision and ratification of Yavapai County Defendants Smith, Mickle, and Eller's actions.  (*Id.* ¶ 75.)

1        As the State Bar of Arizona Defendants note, the State Bar of Arizona operates
2    under the direction and control of the Supreme Court of Arizona, which has not
3    authorized it to exercise any policy-making or supervisory authority over any county
4    sheriff's deputies.   (Doc. 82, Ex. 1, Panahi Aff. ¶ 3.)   The State Bar of Arizona
5    Defendants assert that Hauser was not the subject of the unauthorized practice of law
6    charge.   (Doc. 82 at 6.)   Rather, the State Bar of Arizona Defendants only examined the
7    charge made against McMillan.   (*Id.*)   Defendants cite case law supporting that, in these
8    circumstances, Hauser suffered no injury in fact; thus, she lacks standing and there is no
9    subject matter jurisdiction.   (*Id.*, citing cases.)   *See Parkhurst v. Tabor*, 569 F.3d 861, 866
10   (8th Cir. 2009) ("'a citizen lacks standing to contest the policies of the prosecuting
11   authority when he himself is neither prosecuted nor threatened with prosecution' because
12   'a private citizen lacks a judicially cognizable interest in the prosecution or
13   nonprosecution of another'") (quoting *Linda R.S. v. Richard D.,* 410 U.S. 614, 617
14   (1973)); *see also Younger v. Harris*, 401 U.S. 37, 42 (1971) (where appellees alleged that
15   they felt "inhibited" by a state syndicalism law, but they were never indicted, arrested, or
16   even threatened with prosecution, finding that there was no live controversy and no
17   federal court jurisdiction); *Bailey v. Patterson*, 369 U.S. 31, 33 (1962) (appellants lacked
18   standing to enjoin criminal prosecutions since they themselves had not been prosecuted
19   or threatened with prosecution).   The State Bar of Arizona Defendants have demonstrated
20   that they had no connection to Hauser and that Hauser suffered no actual injury from the
21   State Bar of Arizona Defendants' communications with Millan.   *See Wolfson*, 616 F.3d at
22   1056.

23       In her Response to the Motion to Dismiss, Hauser fails to present any further facts
24   or evidence to show that there is subject matter jurisdiction.   (*See* Doc. 86.)   Instead, she
25   alleges generally, absent any supporting evidence, that the three State Bar of Arizona
26   Defendants provided aid and counsel to other Defendants in this case; they intended to
27   aid other Defendants for the purpose of protecting criminals; they participated in some
28   elements of the crimes against Hauser; and they intended to aid in the cover-up of crimes.

(*Id.* at 5–7.)  Hauser also argues that this Court violated her rights when it ordered that she could not have her counsel of choice.  (*Id.* at 10–14.)  Nothing in Hauser's Response or her voluminous attachments is sufficient to establish standing and subject matter jurisdiction as to the claims against the State Bar of Arizona Defendants.  (*See* Doc. 86-1.)[3]  Their Motion to Dismiss for lack of jurisdiction will therefore be granted.  Because this defect is not curable by amendment, the claims against the State Bar of Arizona Defendants will be dismissed with prejudice.

**IT IS ORDERED:**

(1)    The reference to the Magistrate Judge is **withdrawn** as to Defendant Brnovich's Motion to Dismiss (Doc. 67), State Bar of Arizona Defendants' Motion to Dismiss (Doc. 82) and Motion to Strike (Doc. 98), and Yavapai County Defendants' Motion to Dismiss (Doc. 83) and Motion to Strike (Doc. 97).

(2)    State Bar of Arizona Defendants' Motion to Strike (Doc. 98) and Yavapai County Defendants' Motion to Strike (Doc. 97) are **granted**; the Clerk of Court must strike Plaintiff's filings at Doc. 92 and Doc. 95 from the docket.

(3)    Defendant Brnovich's Motion to Dismiss (Doc. 67) is **granted**; the claims against Brnovich are **dismissed with prejudice**.

(4)    State Bar of Arizona Defendants' Motion to Dismiss (Doc. 82) is **granted**; the claims against the State Bar Arizona Defendants are **dismissed with prejudice**.

(5)    Yavapai County Defendants' Motion to Dismiss (Doc. 83) is **granted in part** and **denied in part** as follows:

(a)    the Motion is **granted** as to the claims in Causes of Action Five through Twenty-two and Twenty-six, and these claims are **dismissed with prejudice**;

(b)    the Motion is **granted** as to the *Monell* claims in Causes of Action

---

[3] Hauser attached approximately 480 pages of attachments to her Response.  (Doc. 86-1.)  The attachments include, among other things, excerpts from the Declaration of Independence, the Articles of Confederation, and Montesquieu's "The Spirit of Laws"; copies of prior documents filed in this action; and proposed deposition questions for the State Bar of Arizona Defendants.  (*See, e.g.*, Doc. 86-1 at 1–2.)

Three and Four; and

    (c) the Motion is otherwise **denied**.

  (6) Brnovich, Lee, Brokaw, and Calcagno are **dismissed** as Defendants.

  (7) The remaining claims are:

    (a) First Cause of Action—Fourth Amendment false arrest claim against Defendants Smith, Mickle, and Eller;

    (b) Second Cause of Action—Fourth Amendment excessive force claim against Defendants Smith, Mickle, and Eller;

    (c) Twenty-third Cause of Action—state law battery claim against Defendants Smith, Mickle, and Eller;

    (d) Twenty-fourth Cause of Action—state law negligence claim against Defendants Simmons, Thurman, Garrison, Brown, Mallory, Lundy, Mascher, McQueary, Newnum, Hunt, Martin, Polk, Cordrey, Michalsky, Bigbee, and Toth; and

    (e) Twenty-fifth Cause of Action—state law claim for failure to train/supervise against Defendants Simmons, Thurman, Garrison, Brown, Mallory, Lundy, Mascher, McQueary, Newnum, Hunt, Martin, Polk, Cordrey, Michalsky, Bigbee, and Toth.

Dated this 3rd day of June, 2021.

                 James A. Teilborg
               Senior United States District Judge